620 So.2d 535 (1993)
VALLEY FORGE INSURANCE COMPANY/CNA INSURANCE COMPANY
v.
Darlene STRICKLAND, mother and next friend of Tina Strickland, and Darlene Strickland, individually.
No. 90-CA-0933.
Supreme Court of Mississippi.
May 13, 1993.
Rehearing Denied July 22, 1993.
*536 Dorrance Aultman, Aultman Tyner McNeese & Ruffin, Hattiesburg, Theodore A. Boundas, Robert L. Suomala, Peterson & Ross, Chicago, IL, for appellant.
T. Patrick Welch, McComb, Jim Kitchens, Connie Johnson, Kitchens & Ellis, Jackson, T. Patrick Welch, McComb, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and BANKS, JJ.
DAN M. LEE, Presiding Justice, for the Court:
This case originated when Valley Forge filed a complaint seeking a declaration that it was entitled to the proceeds ($25,000) under an insurance contract between Nationwide Insurance and Vergie Aull. Valley Forge based its claim on the subrogation rights afforded by Mississippi Code Annotated §§ 83-11-103 and 83-11-107. By way of counterclaim, Darlene Strickland sought, on behalf of her daughter, the $25,000 payment representing the limit of Aull's automobile liability policy with Nationwide. She also asserted a claim for a second payment of the policy limits of her *537 insurance binder with Valley Forge because the first payment to her minor daughter was not court approved. Strickland additionally alleged tortious interference with settlement negotiations on the part of Valley Forge and "bad faith."
The chancellor ruled that Strickland was entitled to the $25,000 benefit under the Nationwide policy. He further ruled that Valley Forge must again tender its policy limits of $55,000 due to its failure to obtain court approval. Finally, he found against Valley Forge on the bad faith claim and unconditionally awarded the Stricklands $1,000,000 in punitive damages. The judgment also called for an additional $1,000,000 award payable only if Valley Forge failed to satisfy certain corrective and preventive measures described in the judgment and discussed below.
Valley Forge properly appealed the adverse ruling below, asserting the following as assignments of error:
I. The Chancery Court erred in refusing to apply Louisiana law to the counterclaim for punitive damages.
II. The Chancery Court erred in holding that Valley Forge acted in bad faith and in imposing punitive damages.
III. The Chancery Court awarded excessive punitive damages.
IV. The Chancery Court erred in awarding conditional punitive damages.
V. The punitive damages award against Valley Forge violated the Fourteenth Amendment to the United States Constitution and the Mississippi Constitution.
VI. The Chancery Court erred in denying Valley Forge a jury trial on the counterclaim for bad faith.
VII. The Chancery Court erred in the calculation of damages, attorney's fees, and interest.

STATEMENT OF THE FACTS
On June 9, 1987, Darlene Strickland, a resident of Tangipahoa Parish, Louisiana, applied for an automobile liability policy from Valley Forge. The parties agreed to a temporary binder pending further review of the application. Although no policy was ever issued, the binder was in effect on July 23, 1987, the date of the automobile accident that ultimately gave rise to this suit. The binder provided for uninsured motorist coverage of $50,000 and medical payments coverage of $5,000.
On the day of the accident, Strickland's twelve year old daughter, Tina, was a passenger in an automobile being driven in Jackson County, Mississippi, by her father's sister, Vergie Aull, a Mississippi resident. As a result of a collision with a van, Tina suffered severe injuries, including brain damage. These injuries initially required a lengthy hospital stay and costly rehabilitation. Tina will continue to require extensive medical care.
During the early stages of Tina's recovery in a Mississippi hospital, her parents hired Robert Carter, a Louisiana attorney, to pursue Tina's legal claims. Carter began corresponding with the CNA insurance group. The CNA group is a collection of independent insurance companies that are associated for certain purposes. Valley Forge is a member of the CNA group. Carter made contact with Diane Nelson, a claims specialist in Valley Forge's Metairie, Louisiana, office.
After an initial investigation, Nelson requested authority to pay the policy limits, $55,000. During the investigation Nelson learned that Nationwide accepted Aull's liability and hoped to settle for the $25,000 limit on Aull's policy. She also obtained information that allowed her to estimate that Tina's damages exceeded $200,000.
After receiving approval from her superiors, Nelson mailed a draft for $55,000 to the Stricklands, payable to the order of "Alvin Denman Strickland & Margaret Darlene Strickland, as Parents/Guardian of Tina Strickland, A Minor, and their Attorney Robert J. Carter." Included with the check was a "Receipt for Payment," a "Subrogation Receipt," and a note to Carter asking him to have his clients execute the documents prior to the release of the funds. The Stricklands executed the documents and received the balance after Carter deducted a fee of $12,146. No court *538 ever approved the settlement or supervised the disbursement of the funds.
After obtaining the $55,000 from Valley Forge, the Stricklands, through their attorney Carter, continued to seek recovery from Aull's automobile liability insurer, Nationwide. In June 1988, the Stricklands filed suit in Louisiana against Aull, her husband, the driver of the van involved in the accident, and Nationwide. During the pendency of this action, Carter was apparently terminated and the Stricklands employed their current lawyers. The Louisiana suit was not prosecuted further.
Nationwide indicated a willingness to pay the full limits of the policy held by Mrs. Aull to the Stricklands. However, Nationwide was unwilling to do so unless Valley Forge waived whatever subrogation rights it held in connection with Valley Forge's payment to the Stricklands. (Either by virtue of Mississippi statutory law or the document titled "Subrogation Receipt" which purported to transfer to Valley Forge all of Tina's claims against third parties.) Valley Forge refused to waive, thereby creating an impasse. Eventually, Valley Forge filed a declaratory judgment action in a Mississippi court to determine the validity of its subrogation claim. The original plaintiff was CNA but Valley Forge was later substituted as the real party in interest by an agreed order. The Stricklands filed an answer denying the validity of the subrogation claim and counterclaimed alleging that the $55,000 payment was a nullity for lack of court approval and further alleging tortious interference and "bad faith" on the part of Valley Forge.

SUMMARY OF THE CHANCELLOR'S JUDGMENT
The significant portions of the lower court's judgment and opinion are summarized below, largely in the chancellor's own words.

1. Is Valley Forge entitled to subrogation or offset?
No. Under Louisiana law and their own policy provisions, Valley Forge is not entitled to subrogation or offset. Tina is entitled to the $25,000.

2. Has there been a valid settlement of Tina's claim under Louisiana law?
No. Since no court approval was obtained for the $55,000 payment by Valley Forge, there has been no settlement, the subrogation agreement is void, and Tina is entitled to receive a court-approved settlement of $55,000 from Valley Forge.

3. Is Valley Forge liable to Tina for interest on the Nationwide $25,000?
Yes. Valley Forge is liable for interest at 8% per annum from November 29, 1988 (the date the court found that payment was offered) until the date such sum was (or is) paid.

4. Is Tina entitled to recover punitive damages from Valley Forge?
Yes. Valley Forge by filing this suit, as well as by refusing to acknowledge it had no subrogation rights, wrongfully interfered with Tina's recovery of the $25,000. The chancellor awarded the Stricklands $1,000,000 unconditionally and another $1,000,000 should Valley Forge fail to comply with certain corrective requirements set out at length in the chancellor's opinion.

I. The Chancery Court erred in refusing to apply Louisiana law to the counterclaim for punitive damages.
The chancellor applied Mississippi law to the counterclaim, relying on the public policy exception to our normal "most significant relationship" choice of law rule. The protection of minors was the policy concern that was purportedly offended by application of Louisiana law. Valley Forge disputes the applicability of the public policy exception, and asserts that Louisiana law should apply to the counterclaim. Apparently Louisiana law would not provide for punitive damages in this case.
After careful consideration of the record, we conclude that there was no requirement that the lower court choose between Mississippi and Louisiana law for purposes of assessing punitive damages. The law applicable to the underlying tort is also applicable on the issue of punitive damages. Restatement (Second) of Conflicts *539 of Law § 171. The chancellor based his award of punitive damages on Valley Forge's assertions of subrogation rights and its failure to obtain court approval of the original settlement payment. We are of the opinion that only the assertion of the subrogation right rises to the level of tortious conduct. While the failure to obtain court approval of the initial payment was an oversight, requiring a second, court supervised payment, it cannot be said to have been in callous disregard to the rights of another. Consequently, it cannot support an award of punitive damages.
As for the assertion of subrogation rights under Mississippi statutory law, the chancellor correctly found that this conduct occurred in Mississippi. As he stated in his opinion:
Valley Forge considered Tina's claim worth more than $205,000. Valley Forge knew, or should have known, that the subrogation agreement signed for Valley Forge by the Stricklands was void, or at least subordinate to Tina's being made whole. Valley Forge knew Louisiana law did not permit subrogation or offset until after the insured is made whole. Valley Forge knew it did not obtain court approval of the settlement of Tina's claim. Valley Forge knew Tina was seeking recovery of the $25,000 from Aull-Nationwide, and $10,000 from Cromwell-Automotive. Armed with all this information, Valley Forge's subrogation/offset contention is without merit and frivolous. Armed with such information, Valley Forge has engaged in a bad faith effort to assert in Mississippi a contention Valley Forge knows it cannot successfully assert in Louisiana, the state where the contract was made.

(emphasis added).
We will address whether this conduct warrants punitive damages below. For now it is important to note that the only tortious conduct to be found in the record occurred in Mississippi. It follows, a fortiori, that the only law to consider in assessing punitive damages is Mississippi law. The conflict of punitive damages law perceived by the chancellor was a false one. However, he cured his mistake by torturing the choice of law rules to yield the same result. Where a lower court reaches the proper result, albeit through no fault of its own, we will not reverse. See Monroe County Bd. of Educ. v. Rye, 521 So.2d 900 (Miss. 1988). Thus, this assignment of error is without merit.

II. The Chancery Court erred in holding that Valley Forge acted in bad faith and in imposing punitive damages.
The chancellor held that Valley Forge's assertion of a subrogation right in Mississippi was an act of "bad faith" that wrongfully interfered with Tina's settlement negotiations with Nationwide. On appeal, Valley Forge asserts that its actions were justifiable and that Nationwide was merely seeking an excuse to withhold payment. Valley Forge argues that it never considered subrogation until Nationwide demanded a waiver of such claims. Then, on the advice of outside counsel, Valley Forge came to believe that a Mississippi court might apply this State's statute allowing subrogation even though that statute is at odds with both Louisiana law and the provisions of the policy that would have issued to the Stricklands. Valley Forge cites a case wherein this Court refused to allow a claim under the Louisiana Direct Action statute because to do so would conflict with Mississippi public policy. See McNeal v. Administrator of Estate of McNeal, 254 So.2d 521, 524 (Miss. 1971).
According to Valley Forge, the declaratory judgment action was filed to settle this "question" of Mississippi law, in order to expedite payment to the proper party and not to hold up or interfere with Tina's recovery. Valley Forge relies on Employers' Mutual Casualty Co. v. Tompkins, 490 So.2d 897 (Miss. 1986) where this Court held that filing a complaint to resolve a legal issue is not to be considered bad faith merely because the issue is ultimately resolved against the insurer.
The same conduct may give rise to an action for breach of contract as well as an action in tort. Under the facts of this case, *540 any action for breach, including punitive damages for bad faith breach, would of course be subject to Louisiana contract law. However, if Valley Forge's actions in Mississippi also constitute an intentional tort or negligence, then Mississippi tort law, including the rules related to punitive damages would control. Beyond this choice of law issue, however, the distinction between tort and contract actions is largely academic. Either may provide a basis for imposition of punitive damages under proper circumstances. The chancellor in his written opinion labelled Valley Forge's conduct a "bad faith effort" to assert a meritless contention in the courts of Mississippi, implying a breach of the implied contractual covenant of good faith and fair dealing. We consider it to more properly involve gross negligence in filing and maintaining a groundless lawsuit, to the detriment of the Tina Strickland.
The standard for punitive damages is the same under either approach. "A plaintiff is entitled to punitive damages only if he has demonstrated a willful or malicious wrong or the gross, reckless disregard for the rights of others." Strickland v. Rossini, 589 So.2d 1268 (Miss. 1991).
On the facts of this case, we have no difficulty concluding that Valley Forge acted negligently. By virtue of its relationship with Tina Strickland, it owed her a duty not to interfere with her recovery of amounts due to her. This duty transcends the contract between Valley Forge and Darlene Strickland. Valley Forge breached this duty by asserting a meritless subrogation claim. As a result Tina lost the use of desperately needed funds, unquestionably suffering serious damages. As for punitive damages we agree that the conduct demonstrated a callous and reckless disregard for the rights of Tina Strickland. To borrow an analogous concept from contract cases, Valley Forge had no "arguable basis" for its position. The claim that a Mississippi court would apply Mississippi statutory law is patently untenable, given the policy provisions. Even a Mississippi insurance contract could contain effective clauses subordinating an insurer's subrogation claim to the insured's interest in full recovery, statutory offset rights notwithstanding.
Thus although not technically "bad faith" as that term is used in breach of contract cases, Valley Forge's conduct was sufficiently egregious to justify punitive damages. Accordingly, this assignment of error is without merit.

III. The Chancery Court awarded excessive punitive damages.
The chancellor awarded $1,000,000 in punitive damages unconditionally based on Valley Forge's assertion of subrogation rights and another contingent $1,000,000 based on the failure to obtain court approval for the Louisiana settlement. We affirm the unconditional award under this heading and address the contingent award below.
Valley Forge's argument on this issue consists of two assertions that punitive damages in any amount are improper. First the company denies any malice or recklessness. According to Valley Forge, the Stricklands' insurance claim was handled promptly and fairly, with coverage acknowledged and limits paid one month after notification of the claim. Thus, in Valley Forge's estimation, there was no evidence of an intent to cause harm.
Next Valley Forge denied any actual damage and cited precedent to the effect that, "an award of punitive damages must be supported by the existence of actual damages." See Defenbaugh and Co. v. Rogers, 543 So.2d 1164, 1167 (Miss. 1989). The company claims that Tina suffered no actual harm as a result of its conduct. According to Valley Forge, the Chancery Court did not articulate how, and in what amount, Tina had been actually harmed.
No hard and fast rule exists for establishing the maximum amount of punitive damages awardable in any given case. Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172 (Miss. 1990); Bankers Life and Cas. Co. v. Crenshaw, 483 So.2d 254 (Miss. 1985). Instead, the amount must be considered in light of several factors. First, the amount awarded should serve to *541 punish the insurer and to deter it from committing similar offenses in the future. Second, the amount should serve as an example set to deter others from committing similar offenses. Third the amount awarded should account for the insurer's pecuniary ability and financial worth. And fourth, the amount constitutes compensation for the plaintiff for his or her "public service" in bringing the action. Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172 (Miss. 1990).
On appeal, an award will be disturbed only where it is so excessive that it evinces passion, bias and prejudice on the part of the jury so as to shock the conscience of the court. Williams, 566 So.2d at 1190; Crenshaw, 483 So.2d at 278.
The $1,000,000 amount awarded unconditionally below is not shocking to the conscience of the Court. In fact the 1.5% of net worth awarded here is proportionately lower than in other similar cases. See e.g., Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172 (Miss. 1990) (5 1/4 per cent of net worth affirmed). Given the egregiousness of Valley Forge's conduct in holding up Tina's recovery for her injuries, as well as the serious actual damages suffered, it cannot be said that this award was so excessive as to evidence passion, bias, or prejudice on the part of the chancellor. Accordingly, this assignment of error is without merit.

IV. The Chancery Court erred in awarding improper relief.
Valley Forge argues that the non-monetary relief granted by the chancellor violates important legal principles by going beyond what is necessary to decide the pending case and by disregarding the cautious approach to punitive damages advocated by this Court.
There are two rules applicable to this issue. First, chancellors have only those remedial powers necessary to a particular case:
The remedial powers of our chancellors are sufficient to vindicate the claims and interests of all litigants. Those powers are as broad as equity and justice require. Those powers have always been marked by flexibility and expansiveness so that appropriate remedies may be decreed to satisfy the needs of the particular case. The chancellor's remedial powers are marked by plasticity. Equity jurisdiction permits innovation that justice may be done. That there is no precedent for the exact relief sought is of no consequence.
Courts of equity have all remedial powers necessary to the particular case, except those that are expressly forbidden by law.
Hall v. Wood, 443 So.2d 834, 842-43 (Miss. 1983) (emphasis added).
The second general rule is that punitive damages in Chancery Court are not favored and are to be allowed only with caution and within narrow limits. Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454 (Miss. 1983) (footnote 1); Standard Life Ins. Co. of Indiana v. Veal, 354 So.2d 239 (Miss. 1977).
Obviously the corrective measures fashioned by the chancellor were not intended to be of any direct benefit to the plaintiff in this case. Although his intentions were laudable, matters of such general and far reaching import are better left to the legislative branch. Courts have only the more narrow duty to interpret the law. Furthermore, we do not consider the conduct related to the settlement in Louisiana sufficiently culpable to justify punitive damages. For the foregoing reasons, we reverse the award of the second million dollars as well as the alternative affirmative measures.

V. The punitive damages award against Valley Forge violated the Fourteenth Amendment to the United States Constitution and the Mississippi Constitution.
This issue was definitively resolved by this Court in Ivy v. General Motors Acceptance Corporation, 612 So.2d 1108 (1992) ("In sum, this Court rejects GMAC's contention that Mississippi's system for awarding punitive damages is unconstitutional.") *542 Under the ruling in Ivy, this assignment of error is without merit.

VI. The Chancery Court erred in denying Valley Forge a jury trial on the counterclaim for bad faith.
Valley Forge filed its declaratory judgment action in the Chancery Court of Jackson County. After the Stricklands filed their counterclaim seeking punitive damages, Valley Forge filed a motion requesting a jury trial or, in the alternative, a transfer to Circuit Court. The judge denied both these motions and proceeded to trial.
This assignment of error calls upon the Court to revisit the conflict between Article 3, Section 31 and Article 6, Section 147 of the Mississippi Constitution. These sections provide, in relevant part:
The right of trial by jury shall remain inviolate,... .
Article 3, Section 31.
No judgment or decree in any chancery or circuit court rendered in a civil cause shall be reversed or annulled on the ground of want of jurisdiction to render said judgment and decree, from any error or mistake as to whether the cause in which it was rendered was of equity or common-law jurisdiction. .. .
Article 6, Section 147.
This Court unquestionably extended the power to impose punitive damages to Chancery courts in Tideway, supra. We did so with full knowledge of our prior decisions holding that a chancellor's failure to provide a jury trial is not grounds for reversal. See e.g. Louisville & Nashville R.R. Co. v. Hasty, 360 So.2d 925, 926 (Miss. 1978). Indeed, in Tillotson v. Anders, 551 So.2d 212 (Miss. 1989), the majority stated, "Section 31 [constitutional right to jury trial] is of no effect in chancery." (footnote 2). Thus, this assignment of error is without merit. In a proper case this Court may someday reconsider the holding in Tillotson, but we see no reason to grapple with the issue in a case where the complaining party chose the Chancery court as the forum.

VII. The Chancery Court erred in the calculation of damages, attorney's fees, and interest.
Finally, Valley Forge challenges the lower court rulings on the $55,000 second payment, the $30,000 in attorneys' fees, and the interest on the $25,000 payment ordered from Nationwide to Tina.
First, Valley Forge argues that even if the first payment it made to the Stricklands was not an effective settlement of Tina's claim, payment of the full amount a second time would only be appropriate if there were evidence that the funds were improperly used. The insurer cites Succession of Emonot, 109 La. 359, 33 So. 368 (1902), for the proposition that if a tutor accepts payment in settlement of a claim belonging to a minor without court approval, the tutor becomes liable to the minor only for the difference between the amount received by the minor and the total amount which the court finds should have been received. However, the tutor's liability for mishandling monies is not at issue in this case. Under applicable Louisiana law, a compromise of a minor's claim without court approval is a nullity. See Guidry v. Bowers, 458 So.2d 933 (La. App. 1st Cir.1984). Therefore, under strict application of Louisiana law, Tina never received anything. Thus, Valley Forge must pay the full limit again. Accordingly, the $55,000 award was apparently proper.
Next, Valley Forge challenges the award of attorney "fees and expenses" and prejudgment interest at the legal rate on the $25,000 payment from Nationwide. Attorney fees may be awarded in cases where punitive damages are proper, regardless of the existence of contingent fee arrangements. Likewise, in the absence of statutory authority, prejudgment interest is also allowable in cases where punitive damages are justified. See Stanton & Associates v. Bryant Const. Co., 464 So.2d 499, 502 (Miss. 1985). As discussed above, punitive damages were proper in this case and consequently the award of attorney fees and interest was not error.

*543 CONCLUSION
For the foregoing reasons, the judgment of the lower court is affirmed in all respects except for the second million dollars of punitive damages and the alternative affirmative measures, which are reversed and rendered.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, ROBERTS and SMITH, JJ., concur.
McRAE, J., not participating.