664 So.2d 164 (1995)
Charles SESSUMS, d/b/a Global Coaches, Ltd., and Southern Professional Vehicles, Inc.
v.
NORTHTOWN LIMOUSINES, INC., Executive Limousines, Inc., and Hugh Damien International, Inc.
No. 91-CA-01070-SCT.
Supreme Court of Mississippi.
September 7, 1995.
*165 Thomas J. Lowe, Jr., Jackson, for appellants.
Karla J. Pierce, Hubbard & Pierce, PLLC, Jackson, Dale Hubbard, Hubbard & Pierce, Jackson, Kimberly R. Lentz, Sam S. Thomas, Heidelberg & Woodliff, Jackson, for appellees.
Before DAN M. LEE, P.J., and McRAE and SMITH, JJ.
McRAE, Justice, for the Court:
In this speedometer rollback case, a jury of the Hinds County Circuit Court awarded Northtown Limousines, Inc. actual and punitive damages against Charles Sessums d/b/a Global Coaches, Ltd. and Southern Professional Vehicles, Inc. At issue was whether Sessums had rolled back the odometer on a 1981 Cadillac limousine which Northtown Limousines, Inc. purchased from him. Sessums now complains that the jury's verdict and its award of punitive damages were against the overwhelming weight of the evidence. Upon examining the record, we find a pattern of misrepresentations throughout Sessums' transactions with this vehicle, and even after litigation was initiated, so egregious as to affirm the imposition of punitive damages and attorney fees.[1]

I.
The subject of this appeal was a gold[2] 1980 Cadillac limousine with more mileage than its odometer would appear to indicate. The VIP stretch model was equipped with a bar, moon roof and color television. As the facts illustrate, the various parties were in possession of the limousine between 1986 and 1989.
Dick Hall, who moved to this country from Great Britain in the mid-1980s, was president and owner of Hugh Damien, International, Inc. and Executive Limousines, Inc., operated an executive transportation and protection service. His primary client was Jackson oilman, Dudley Hughes, who personally guaranteed Hall's loan from Trustmark National Bank on the limousine as well as another vehicle. Hall purchased the limousine in 1986 from Executive Coach Builders, Inc. in Springfield, Missouri for $16,000.00. As of May 7, 1986, the vehicle had an odometer reading of 90,586 miles. Work orders on the vehicle for service and repairs performed between May and September, 1986 at LeFleur Cadillac in Jackson indicate that the odometer reading on the vehicle during that time frame was between 90,586 and 95,972 miles. A trip ticket entered for the limousine on May 31, 1986 indicates a starting odometer reading of 91,371 miles and a closing reading of 91,436 miles. Several days later, on June 4, 1989, the limousine started the evening with a reading of 91,458 miles and ended the next morning with 91,512 miles.
In early October of 1986, Hall's accountant advised him to sell several vehicles until his company became more profitable. Since Hall was not in the business of selling limousines, he delivered the vehicle on October 16 *166 or 17, 1986, to Charles Sessums d/b/a Global Coaches, Ltd. on consignment. To the best of Hall's recollection, the limousine had an odometer reading of around 96,000 miles at that time.
The limousine remained in Sessums' possession between October 18, 1986 and May, 1987. Larry Hale, a former salesman for Sessums, recalled seeing the limousine in October after it returned from Texas where it allegedly had been repainted and reworked.[3] He testified that the odometer reading was "40-something," and that he had taken the vehicle to Clarksdale to show a potential buyer who had been informed that it had been driven less than 50,000 miles.
In May, 1987, Sessums sold the limousine to Tommy Pack for $14,1162.00 through Global Coaches. In preparation for the imminent sale, Herbert Coleman, a loan officer for Trustmark National Bank, which held the note on the vehicle, advised Hall to have the title transferred from Hugh Damien, International to Executive Limousines. On April 24, 1987, Hall signed an Application for Certificate of Title and Affidavit for Sale of Motor Vehicle, each of which show the vehicle in question as having only 47,526 miles on it. Hall testified that he did not remember seeing the mileage on either document and would not have signed them had he seen such a representation, knowing that the limousine had in excess of 90,000 miles on it. As he further stated, he had not seen the vehicle in seven months and would not have known what the exact mileage was. Hall also signed an Assignment of Title by Registered Owner form later completed by Sessums which indicated that the limousine had an odometer reading of 53,727 miles. He specifically remembers that the form was blank when he signed it.
Pack stated that the limousine had about 53,700 miles on it when he purchased it. He testified that Sessums told him during negotiations that the limousine had been owned by Dudley Hughes. Sessums then made a telephone call to someone whom he represented as Hughes, who told Pack how well the vehicle had been maintained. Sessums denies representing that the conversation was with Dudley Hughes; to the contrary, he contends that Pack talked with Hall, who was speaking on the phone in Hughes' office. Pack, however, testified that he did not, at any time, speak with anyone with a British accent.
After the lawsuit was filed, Sessums sought Pack's sworn signature on a March 5, 1990 letter he had prepared regarding the terms the sale of the limousine to Pack. In relevant part, the letter stated as follows:
... I purchased this vehicle from Mr. Dick Hall on May 8, 1987, at which time Mr. Dick Hall signed a bill of sale and an odometer statement stating that this vehicle had 53,777 miles on it. At the time of the purchase Mr. Dick Hall stated to me that these were the true and correct miles and this was a used vehicle which I assumed belonged to Mr. Dudley Hughes. Mr. Hall did not tell me any different. The bill of sale and the odometer statement were signed after a bill of sale and odometer statement had been totally and completely filled out. Mr. Hall himself, signed and assured me that these were the correct miles and the car was in good condition.
The only involvement that you, Charles L. Sessums, had on this transaction was the filling out of the paper work for me Tommy Pack the purchaser, and Mr. Dick Hall the seller, because we were not dealers. I paid Mr. Hall personally for the vehicle and you did not receive any money or enumeration [sic] in this transaction; it was handled by Mr. Hall and myself.
* * * * * *
At the time this vehicle had a little over 53,000 miles on it. I questioned Mr. Hall about the milage [sic] at that time and he told me these were the true miles and that the car had been totally refurbished at a factory... .
*167 Pack refused to sign the letter because, as he testified, he did not buy the limousine from Dick Hall, and he had neither heard of Hall nor spoken to him. Further, he had not paid Hall for the vehicle, but had written a check payable to Sessums' business, Global Coaches. He stated that Sessums told him that if he didn't sign the letter, Sessums would sue him. Sessums, in turn, denied Pack's testimony.
On May 24, 1988, Pack sold the limousine back to Sessums for approximately $10,500. Eight months later, Sessums sold the limousine to Greg Day, owner of Northtown Limousines, Inc. for $11,500. At that time, the odometer indicated a reading of 66,535 miles. Day, like Pack, testified that Sessums represented to him that the car was a low mileage, one-owner vehicle which had been owned by Dudley Hughes. He stated that he relied on those representations in making the decision to buy the limousine. Sessums denied making any such representation, testifying that he had told Day and Pack only that the limousine was owned by Dick Hall, who worked for Dudley Hughes.
Shortly after Northtown purchased the limousine, it developed mechanical problems, often requiring the limousine service to send its business to other companies. Cecil Matheny, an appraiser with experience appraising limousines, testified that the sort of repairs required  an engine overhaul and major transmission work  were not the sort of problems normally encountered in a vehicle with only 60,000 miles, but in one with "excessive mileage." In late 1989, Day called Hall about a black Cadillac that he owned. As Hall recalls,
And in that conversation, he said something  it was two years ago so I can't remember it word-for-word  but he said something about you used to own an old Cadillac that I've now had painted white. And I said something like, "oh, yes, it earned its money, that car, but, boy, it's got high mileage now. It must be over 100,000 miles." There was a deadly hush on the phone and he said, "What?" I said, "It's earned its money, that car, and it must have traveled now over 100,000 miles." And he said, "You're kidding me," and I said, "Oh, no." I said, "when I sold the car, it had done in excess of 94,000 miles." And the impression I got was that he was horrified.
Day likewise testified, "I called him because the car in question had broken down and he told me he wouldn't doubt it, that he had owned it before I did and when he sold it, it had in excess of 100,000 miles on it. That's when my jaw dropped."
On January 2, 1990, Northtown filed a complaint against Executive Limousines, Inc., Hugh Damien International, Inc., Global Coaches, Ltd., Southern Professional Vehicles, Inc., Tommy J. Pack[4] and Charles Sessums, all of which were in the chain of title. The complaint charged that these parties had breached the implied warranty of merchantability pursuant to Miss. Code Ann. § 75-2-315.1, various express warranties, the warranty of fitness for a particular purpose and further, that the various defendants had committed fraud in misrepresenting the limousine's actual mileage. Northtown sought actual damages of $100,000.00, or in the alternative, recision of the sales contract plus actual damages[5], as well as punitive damages in the amount of $1,500,000.00.
Global, Southern, Pack and Sessums denied the allegations raised by Northtown. Hugh Damien, likewise, denied Northtown's allegations and filed a cross-claim against Global and Sessums on March 13, 1990, seeking a judgment against them for any liability, costs, attorney fees and other damages that it might incur in the matter. Southern, Global and Sessums, in turn, filed a cross-claim against Hugh Damien, asserting that the company was solely responsible for any damages to Northtown and likewise seeking recovery for any liability, costs, attorney fees or other damages that might be incurred.
On July 19, 1990, Northtown added Southwest Professional Vehicles, Inc. to the list of named defendants, charging that it, too, had *168 been in possession of the vehicle during the time period in which the odometer was allegedly altered. Global, Southern and Sessums' motion to amend their cross-claim to include Richard Hall and Executive Limousines, Inc. was denied by the circuit court on June 26, 1991.
A jury trial was held on July 22, 1991. Motions made by the various parties for directed verdicts were all denied by the circuit court. After hearing all evidence, the jury returned a verdict against Sessums and Global, awarding Northtown actual damages in the amount of $5,253.50 and $100,000.00 in punitive damages. On Hugh Damien's indemnity claim, the jury found against Sessums and Global.
In its final order, the circuit court further found that Northtown was entitled to $33,811.82 in attorney fees. Northtown was awarded total damages in the amount of $139,065.32 plus interest. Resolving the other claims and cross-claims, the circuit court found that Hugh Damien was entitled to recover attorney fees and litigation expenses totaling $28,681.97 from Sessums and Global on its indemnity claim. The court dismissed with prejudice Northtown's claims and Sessums', Global's and Southern's cross-claim against Executive and Hugh Damien.
Global, Southern and Sessums filed a motion for a new trial, remittitur or j.n.o.v. with regard to the judgment in favor of Northtown, which was denied by the circuit court on September 23, 1991. With regard to the judgment on the Hugh Damien indemnity claim, Global, Southern and Sessums likewise filed a motion for a new trial, remittitur or j.n.o.v. which also was denied on October 10, 1991.
Sessums, Global and Southern now assert that the verdict of the jury was the product of bias and passion and against the overwhelming weight of the evidence, and further, that the award of punitive damages was against the overwhelming weight of the evidence. Hugh Damien and Executive Limousines adopt by reference Northtown's brief and present for this Court's consideration the issue of whether an appeal was properly perfected as to Hugh Damien International, Inc. and Executive Limousines, Inc. Because Sessums, in his Reply Brief, concedes that he did not appeal the circuit court's order in favor of Hugh Damien and Executive Limousines, the issue is moot.

II.

WHETHER THE VERDICT OF THE JURY WAS THE PRODUCT OF BIAS AND PASSION AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
At issue is whether the jury improperly determined who rolled back the odometer on the 1980 Cadillac VIP Limousine which was originally purchased by Dick Hall for Hugh Damien International/Executive Limousines, and through a series of transactions involving Charles Sessums d/b/a as Global Coaches and Southern Professional Vehicles, ended up in the hands of Greg Day and Northtown Limousines. Hall denies any knowledge of the car's diminished mileage reading until he talked with Greg Day in 1989, and Sessums denies that he rolled back the odometer in this or any other vehicle.
Sessums asserts that the jury's verdict is against the weight of the evidence and the product of bias and prejudice. An assignment of error that the case is against the weight of the evidence is misplaced when, as here, the parties are essentially engaged in a swearing contest. Marcum v. Mississippi Valley Gas Co, Inc., 587 So.2d 223, 228 (Miss. 1991). Nevertheless, when the evidence is conflicting or contradictory, this Court will defer to the jury's determination of the credibility of the witnesses and the weight and worth of their testimony. Odom v. Roberts, 606 So.2d 114, 118 (Miss. 1992); Stubblefield v. Walker, 566 So.2d 709, 711-12 (Miss. 1990). "The reviewing court cannot, therefore, set aside a verdict unless it is clear that the verdict is a result of prejudice, bias or fraud, or is manifestly against the weight of the credible evidence." Wilmoth v. Peaster Tractor Co. of Lexington, Inc., 544 So.2d 1384, 1386-1387 (Miss. 1989).
Resolution of the conflicting testimony in this case was within the province of the jury. Clearly, the jury believed Hall's story *169 and the testimony supporting it and not Sessum's version and supporting evidence. Choosing to believe one story rather than another is not grounds for reversal. Wilmoth, 544 So.2d at 1387. In as much as the evidence in the record does not contradict the jury's findings, we affirm the decision of the court below.

III.

WHETHER THE AWARD OF PUNITIVE DAMAGES WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
Sessums next asserts that the award of $100,000.00 is against the overwhelming weight of the evidence, and that the issue should not have been presented to the jury. Assuming arguendo that punitive damages were appropriate, Sessums further contends that the amount was unreasonable in light of its relationship to the actual damages recovered and his net worth.
We have held that "`[a] plaintiff is entitled to punitive damages only if he has demonstrated a willful or malicious wrong or the gross, reckless disregard for the rights of others.'" Valley Forge Insurance Co. v. Strickland, 620 So.2d 535, 540 (Miss. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 635, 126 L.Ed.2d 593 (1993), quoting Strickland v. Rossini, 589 So.2d 1268, 1273 (Miss. 1991). Punitive damages are to be assessed only in "extreme cases," and since they are intended "as an example and warning to others, `they should be allowed only with caution and within narrow limits.'" Beta Beta Chapter of Beta Theta Pi Fraternity v. May, 611 So.2d 889, 894 (Miss. 1992), quoting Consolidated Am. Life Ins. Co. v. Toche, 410 So.2d 1303, 1304-05 (Miss. 1982); Snow Lake Shores Property Owners Corp. v. Smith, 610 So.2d 357, 362 (Miss. 1992).
Reviewing the record, it is apparent that the odometer on the limousine was rolled back in violation of Miss. Code Ann. § 63-7-203(3) (1989) in a successful attempt to defraud future purchasers. The jury found that Sessums was responsible for that action. In this case, there was more than the simple act of rolling back the odometer. Over a period of more than a year and through a series of transactions, a pattern of misrepresentations emerged regarding both the mileage and ownership of the vehicle. From the evidence, it appears that Sessums took advantage of Hall's lack of familiarity with local motor vehicle registration procedures and provided him with a title transfer form to fill out where the odometer reading had been left blank after Hall turned the limousine over to him on consignment. The record further indicates that Sessums misrepresented to two subsequent purchasers, Day and Pack, that the limousine was a low-mileage vehicle previously owned by a prominent Jackson oilman. Both Day and Pack relied on Sessums' representations in purchasing the vehicle, and Sessums profited from those transactions. Finally, even after suit had been filed, the record indicates that Sessums threatened Pack with further litigation to induce him to sign a sworn statement containing a version of the sale Pack testified was false. It is just this sort of callous and reckless disregard for the rights of others that our system of punitive damages is intended to punish.
As to Sessums' claim that the amount of damages awarded was unreasonable in light of the actual damages as well as his net worth, we have held that "no hard and fast rule exists" for measuring the maximum award than may be made in any particular case. Strickland, 620 So.2d at 540; Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172 (Miss. 1990). To the contrary, we consider a variety of factors, which, set in the insurance context, we enumerated in Strickland as follows:
First, the amount awarded should serve to punish the insurer and to deter it from committing similar offenses in the future. Second, the amount should serve as an example set to deter others from committing similar offenses. Third the amount awarded should account for the insurer's pecuniary ability and financial worth. And fourth, the amount constitutes compensation for the plaintiff in his or her "public service" in bringing the action.
620 So.2d at 541. On appeal, the jury's award of punitive damages will be reversed *170 "only where it is so excessive that it evinces passion, bias and prejudice on the part of the jury so as to shock the conscience of the court." Id.; Williams, 566 So.2d at 1190. Given the facts of this case and the need to deter Sessums and others from engaging in a similar course of conduct in the future, we cannot say the jury's award of $100,000.00 in punitive damages was excessive. Further, we have held that where punitive damages are proper, attorney fees may be awarded. Strickland, 620 So.2d at 542. Therefore, Sessums cannot complain about the award of attorney fees to Northtown.

IV.
In conclusion, we find that the jury's decision is supported by the evidence in the record, and further that the award of punitive damages and assessment of attorney fees was neither unwarranted nor unreasonable. Accordingly, we affirm the circuit court's denial of Sessums' motion for a new trial, j.n.o.v. or remittitur.
JUDGMENT AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
NOTES
[1] The award of $5,253.50 in actual damages is not at issue in this appeal.
[2] Apparently, it was an unusual shade of gold. Sessums testified that he told Hall, "I told him it was orange and ain't nobody going to buy an orange car. It was orange inside, outside, everywhere."
[3] Hale testified that the limousine spent four to six weeks in Dallas. It is unclear where it was garaged and what work was done on it. Hale apparently took the vehicle to Southwest Professional Vehicles, Inc. in Dallas, but that business's owner, Carl William Myers, denied that his company did any work on the vehicle.
[4] The complaint against Pack was dismissed by stipulation on November 26, 1990.
[5] The circuit court granted Northtown's ore tenus motion to withdraw allegations regarding recision of contract.