879 So.2d 525 (2004)
Janie JOHNSON, as Executrix of the Estate of Walter Johnson, Appellant
v.
BLACK BROTHERS, INC., Appellee.
No. 2003-CA-00878-COA.
Court of Appeals of Mississippi.
August 3, 2004.
*526 Thomas Buchanan Hood, Andrew J. Kilpatrick, Ridgeland, Matt Raymond Walker, attorneys for appellant.
J. Niles McNeel, Louisville, attorney for appellee.
EN BANC.
LEE, J., for the Court.

PROCEDURAL HISTORY AND FACTS
¶ 1. In 1997, the Johnsons contracted with Black Brothers, Inc., for the construction of a home. The house was completed in December 1997 and Black Brothers returned to make repairs at Mr. Johnson's request in April 1998.
¶ 2. On September 28, 2000, Janie Johnson, in her capacity as executrix of the estate of her husband, Walter Johnson, filed a complaint against Black Brothers in the Chancery Court of Choctaw County. The complaint alleged intentional misrepresentation, negligent misrepresentation, breach of implied warranty, negligent construction, intentional infliction of emotional distress, and breach of contract. Johnson also sought removal of a construction lien against the property in addition to attorney's fees, compensatory damages, and punitive damages. Black Brothers subsequently filed their answer and also counter-claimed for unpaid debts as well as interest and attorney's fees.
¶ 3. A trial was conducted in August 2002, and the chancellor issued his opinion on October 3, 2002. The chancellor determined that there had been a breach of contract, a breach of statutory warranty, and a breach of implied warranty. The chancellor denied Johnson's claim for punitive damages and attorney's fees, finding no proof of any intentional misrepresentation or any intentional act that harmed Johnson. Although the chancellor found Black Brothers liable, he found the evidence presented at trial insufficient to properly fix damages and ordered another hearing on the amount of damages. This hearing was held on February 17, 2003.
¶ 4. In his final judgment, the chancellor held that Johnson should recover $25,000 for the diminished value of the house due to the uneven floor and ceiling and $33,400 for the cost to repair other defects. However, having previously found that Johnson was indebted to Black Brothers in the amount of $20,475.60 for construction of the driveway, the chancellor reduced Johnson's net award to $37,924.40.
¶ 5. Johnson now appeals to this Court asserting the following issues: 1) the chancellor erred in concluding that there was insufficient evidence offered at trial to determine Johnson's damages; 2) the chancellor erred in finding that awarding the cost of repairs to Johnson constituted economic *527 waste; 3) the chancellor erred in finding that the value of the Johnson home had been diminished by $25,000 and 4) the chancellor erred in denying Johnson's claims for punitive damages and attorney's fees.

STANDARD OF REVIEW
¶ 6. In reviewing the decisions of a chancellor, we look to our familiar standard of review:
The findings of a chancellor will not be disturbed or set aside on appeal unless the decision of the trial court is manifestly wrong and not supported by substantial credible evidence or unless an erroneous legal standard was applied. Where there is substantial evidence to support the chancellor's findings, this Court is without the authority to disturb his conclusions, although this Court might have found otherwise as an original matter.
Memphis Hardwood Flooring Co. v. Daniel, 771 So.2d 924(¶ 18) (Miss.2000) (citations omitted).

DISCUSSION OF ISSUES

I. DID THE CHANCELLOR ERR IN CONCLUDING THAT THERE WAS INSUFFICIENT EVIDENCE OFFERED AT TRIAL TO DETERMINE JOHNSON'S DAMAGES?
¶ 7. In her first issue, Johnson claims that the chancellor erred in finding that there was insufficient evidence offered at the first trial to determine her damages. Specifically, Johnson contends that the chancellor was manifestly wrong to reopen the case where both sides had offered expert testimony on damages. The chancellor relied upon Gerodetti v. Broadacres, Inc., 363 So.2d 265 (Miss.1978), in order to determine the appropriate measure of damages. In discussing whether to reopen the case in order to hear additional evidence, the chancellor stated as follows:
This Court normally refuses to take such action for it takes the position that parties have the duty to be prepared to present all of their evidence when they announce ready for trial, and they should not be given a second opportunity when they see shortfalls in their case. Here, though, both sides have failed to produce the evidence required to properly decide this case under principles set forth in the Gerodetti case.
¶ 8. The chancellor found a number of defects existed in the house upon completion by Black Brothers, including unconnected sewer lines, an inadequate number of vents to properly ventilate the crawl-spaces, notches cut in the floor joists to allow room for heat and air ducts, water accumulating under the house from improper site preparation, and an uneven kitchen and family room floor. The chancellor noted that both of Johnson's expert witnesses did not testify as to the specific costs to repair each defect. Mark Watson, an engineer, testified that it would cost around $15,000 to repair the kitchen floor, but that he did not have experience in making the repairs. The chancellor noted "without experience in doing this type work, it is difficult to understand how he could compute the costs of doing it." Tommy McKnight testified that the costs of repairs would be $228,800. However, most of McKnight's costs relate to repairing the uneven floor. There was also testimony that the uneven floor in the kitchen was not noticeable and did not restrict the use of the house or make it less habitable.
¶ 9. There was no specific testimony as to how much it would cost to fix the defects that the chancellor found needed to be corrected. The chancellor found that an award of $228,000 would not be proper, but that Johnson was entitled to recover *528 some damages. We cannot find that the chancellor was manifestly wrong in determining that there was insufficient evidence to prove the amount of damages; thus, this issue is without merit.

II. DID THE CHANCELLOR ERR IN DETERMINING THAT AWARDING THE COST OF REPAIRS TO JOHNSON CONSTITUTED ECONOMIC WASTE?
¶ 10. In her next issue, Johnson claims that the chancellor erred in determining that the cost of repairs constituted economic waste. Johnson contends that the chancellor should have awarded her the amount of $228,000 in damages. In his opinion the chancellor cited the following guidelines for determining damages:
Where a building is completed substantially according to plans or specifications, the measure of damages may be determined by: (1) the cost rule, which is the cost of repairing the defects to make the building or structure conform to the specifications where such may be done at a reasonable expense if unreasonable economic waste is not involved, or (2) the diminished value rule, which is the difference in the value of the property with the defective work and what the value would have been if there had been strict compliance with the contract. The diminished value applies where the defects can not be remedied without great sacrifice of work or material or would impair the building or would involve unreasonable economic waste or where defects can not be repaired at a reasonable cost or where it is not reasonable or practical to remedy the defects or where the cost of remedying the defects will not fully compensate the owner for damages suffered by him.
Gerodetti, 363 So.2d at 267-68. Johnson argues that the defects in the house were appreciable and substantial. However, the chancellor found that:
Mr. McKnight's estimate for the repair is $228,000 or over 80% of the total cost of the house. As the court understands his testimony, the bulk of the costs relates to the reconstruction of the kitchen floor and family room floor and areas over them. The problem with the floor and the cabinets do not affect the house structurally at all except for the need to replace the beam. They are hardly noticeable if one is not aware of there [sic] existence. They do not restrict the use of the house or make it any less habitable. No doubt they do have some impact on the value of the house.
After the hearing on damages, the chancellor did find that to completely redo the kitchen and family areas would be unreasonable in light of the testimony concerning the diminished value of the house and because other witnesses testified as to other less expensive means to repair the defects. Although Johnson did not put on any testimony as to the diminished value of the house, the expert called by Black Brothers was able to give an estimate as to the value of the house with the uneven floor. The chancellor relied upon this estimate in determining that Johnson should receive $25,000 for the diminished value of the house as a result of the uneven floor. We cannot find that the chancellor was manifestly wrong in determining that it would be unreasonable to award Johnson $228,000 in damages; thus, this issue is without merit.

III. DID THE CHANCELLOR ERR IN FINDING THAT THE VALUE OF THE JOHNSON HOME HAD BEEN DIMINISHED BY $25,000?
¶ 11. In her third issue, Johnson claims that nothing in the record supported the amount of $25,000 as a reasonable award for the diminished value of the house. We *529 find it interesting that Johnson first argues that the chancellor erred in ordering a second hearing for determining damages and the diminution in value, yet fails to produce evidence at the second hearing on diminished value, and then demands we remand for another hearing to further determine the diminished value of the house.
¶ 12. The appraisal expert for Black Brothers, Andy Johnson, Jr., who is no relation to the plaintiff, testified that he would reduce the value of the house by $11,250 for the uneven floor. However, the chancellor found that his explanation was lacking and determined that the diminished value of $25,000 was more appropriate as the value of the house without the uneven floor was estimated to be $250,000 and, with the uneven floor, $225,000. Again, we cannot find that the chancellor erred in determining that the Johnson home had been diminished in value by $25,000.

IV. DID THE CHANCELLOR ERR IN DENYING JOHNSON'S CLAIM FOR PUNITIVE DAMAGES AND ATTORNEY'S FEES?
¶ 13. In her last issue, Johnson contends that the chancellor should have awarded her punitive damages as well as attorney's fees. Johnson argues that Black Brothers was aware of the uneven floor, which amounted to intentional or fraudulent misrepresentation. Punitive damages are warranted only where the prevailing plaintiff has demonstrated that the defendant's actions amounted to "a willful or malicious wrong or the gross, reckless disregard for the rights of others." Valley Forge Ins. Co./CNA Ins. Co. v. Strickland, 620 So.2d 535, 540 (Miss. 1993). Furthermore, punitive damages are appropriate only in extreme cases and should be allowed "only with caution and within narrow limits." Beta Beta Chapter of Beta Theta Pi Fraternity v. May, 611 So.2d 889, 894 (Miss.1992).
¶ 14. Our supreme court has established the following elements of intentional or fraudulent misrepresentation as: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury. Franklin v. Lovitt Equip. Co., Inc., 420 So.2d 1370, 1373 (Miss.1982). These elements must be shown by clear and convincing evidence. Id.
¶ 15. Johnson testified that she and her husband, while the house was under construction, noticed the uneven floor and showed it to Black Brothers, which said it would fix it as it put the rest of the floor down. Obviously, the floor was not fixed, but the chancellor did not find any intentional misrepresentation on the part of Black Brothers, stating: "Clearly, there was substantial evidence of negligence on the part of the Black Brothers. There is no evidence of any intentional act that harmed the Plaintiff." The chancellor further noted that there was no proof of damage for a misrepresentation beyond the need to fix the defects caused by the negligence of Black Brothers.
¶ 16. We cannot find any clear and convincing evidence that Black Brothers intentionally or fraudulently misrepresented the damage. We agree with the chancellor that the case at hand lacks the requisite malice or gross negligence in order to consider punitive damages.
¶ 17. THE JUDGMENT OF THE CHOCTAW COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF *530 THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT A SEPARATE WRITTEN OPINION.