IRVING, J.,
for the Court.
¶ 1. Janet Keys (Janet) applied for modification of her divorce settlement with Charles Richard Keys (Charles). The chancellor altered the original judgment of divorce, and ordered: (1) Charles to pay $4,148, representing one-half of the MPACT expenses for Shannon, the parties’ minor daughter; (2) Charles to pay for Shannon’s sorority expenses; (3) a TIGR account in Shannon’s name was an irrevocable gift to her and would not be used to reimburse Janet for Charles’s share of Shannon’s college expenses;[1] and (4) custody of Shannon changed from Charles to Janet. The chancellor declined to hold Janet in contempt for failure to pay past-due child support and also declined to award Charles damages for abusive behavior on the part of Janet.
¶ 2. Feeling aggrieved, Charles appeals and argues that (1) the chancellor erred in ordering him to pay half the cost of Shannon’s MPACT tuition ($4,148), (2) the chancellor erred in holding that the TIGR funds were no longer to be used for educational purposes, (3) the chancellor erred in not finding Janet in contempt for failing to pay child support, (4) the chancellor erred in failing to award damages to Charles for alleged harassment by Janet, and (5) the chancellor erred in awarding custody to Janet and ordering Charles to pay child support to Janet. We find error and therefore reverse and remand for proceedings consistent with this opinion.
*440 FACTS
¶ 3. Janet and Charles Richard Keys were married on June 9, 1979, and divorced on June 29, 1993, due to irreconcilable differences. During their marriage, they had two children, Carmen (born in 1981) and Shannon (born in 1984). Their 1993 judgment of divorce awarded custody of the minor children to Janet, with Charles being ordered to pay $850 in monthly child support ($425 for each child). Charles and Janet agreed to equally share the costs of a college education for each girl, including room, board, tuition, books, and supplies. Additionally, Charles was required to fund an account, in his or Janet’s name, in the sum of $12,057.99 “for the college educational expenses of said minor children, with any sums remaining in said account to be paid over equally to the children after they have graduated from college.... ” This amount was intended to be equal to the present value of two existing TIGR accounts (one for each girl), with all of the custodial accounts being used for the children’s educational expenses.
¶ 4. The judgment of divorce was modified on August 9, 2000, and the following changes were made: (1) Janet was to research the penalties for early withdrawal from the TIGR accounts; and (2) in the event that there was a penalty, the parties were to transfer funds from Shannon’s MPACT account to Carmen’s in order to pay for Carmen’s college education.
¶ 5. Another modification was made to the judgment of divorce on May 17, 2002, that (1) awarded custody of Shannon to Charles, (2) terminated Charles’s child support obligations to Janet for Shannon, (3) ordered Janet to pay Charles $225 per month as child support for Shannon, and (4) ordered Janet to deliver the TIGR accounts for both girls ($10,000 for Shannon and $11,000 for Carmen) to an accountant, Mitchell Blount, for safekeeping until the parties came to a mutual agreement regarding what to do with the accounts.
¶ 6. In October 2003, Janet filed a complaint asking for another modification of the judgment of divorce. This complaint asked that (1) Shannon’s custody be given back to Janet, (2) Janet no longer be required to pay Charles for child support, (3) Charles pay child support for Shannon to Janet, (4) Charles pay half of the cost of the three years of the MPACT that Janet purchased for Shannon, (5) Charles pay for all the costs of Shannon’s joining a sorority while in college, (6) Charles be held in contempt for failure to pay for half of some medical expenses incurred by Carmen, (7) Charles be held in contempt for reporting Janet to the Hinds County Department of Human Services child support collection unit for failure to pay child support, and (8) Shannon’s TIGR funds be deemed her personal property under the Uniform Gift to Minors Act, or, in the alternative, that the TIGR funds should be used to recompense Janet for purchasing three years of MPACT for Shannon.
¶ 7. In his response to Janet’s complaint for modification, Charles claimed that (1) Janet owed him six months of child support ($1,350), (2) Janet should be held in contempt for failing to pay court-ordered child support, and (3) Janet should pay Charles damages (both actual and punitive) for writing the initials “ESAD” on her correspondence with him.
¶ 8. The chancellor entered an order resolving these disputes on May 20, 2004. The chancellor’s order stated that (1) Shannon’s custody would be placed with Janet, because “the evidence shows that for purposes of a permanent residence she moved back in with [Janet] in October, 2003;” (2) Charles would now pay Janet child support for Shannon instead of Janet *441 paying Charles; (3) under the Uniform Gift to Minors Act, Shannon’s TIGR account should be given to her as her personal property and managed by Charles until Shannon turned twenty-one, because “the failure of the parties to cooperate to manage these funds and actually use them for the minor children’s educational needs, and Carmen’s having had the advantage of these funds herself, constitute a significant material change in the circumstances which necessitate modifying the Final Judgment as it relates to the TIGR fund account;” (4) Charles must contribute to any sorority expenses that Shannon incurs while in college; (5) Charles must pay one-half of the MPACT purchased by Janet for Shannon ($4,148); (6) Charles was not in contempt; (7) Janet was required to pay child support to Charles for the months of July and August of 2003; (8) both Charles and Janet owed each other money for medical expenses, with a final calculation that Janet owed Charles $85; and (9) Charles was not entitled to child support for the time period from October 2003 to the present because “the amount of child support due during that period would have been unearned by Charles since Shannon did not live with him during that period.”
¶ 9. After the chancellor issued his decision, both Charles and Janet contested the ruling, although only Charles has appealed, presenting the issues which we stated in the beginning of this opinion.
STANDARD OF REVIEW
¶ 10. We employ a limited standard of review when reviewing the decision of a chancery court. Reddell v. Reddell, 696 So.2d 287, 288 (Miss.1997). We will not interfere with the findings of the chancellor unless he “was manifestly wrong, [his ruling was] clearly erroneous or a wrong legal standard was applied.” Id. (citing Carrow v. Carrow, 642 So.2d 901, 904 (Miss.1994)).
ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Payment of MPACT tuition and TIGR accounts

¶ 11. In his first issue, Charles argues that he should not have been required to pay one-half of the MPACT tuition purchased by Janet. We also address his second issue regarding the TIGR accounts, since our resolution of his first issue depends on our finding regarding the second issue.
¶ 12. The original judgment of divorce specifically stated that Charles was to fund an investment account to be used to pay for the girls’ college education:
Upon the entry of a Final Judgment of Divorce, Husband shall promptly fund an investment account, established in the name of Husband and Wife, or survivor, for the benefit of the two (2) minor children of these parties, in the sum of 12,057.99, and subject to withdrawals only upon signature of both Husband and Wife, said custodial account being for the college educational expenses of said minor children, with any sums remaining in said account to be paid over equally to the children after they have graduated from college or reached their majority without continuing to pursue a college education, ivhichever first occurs. Said amount to be funded by Husband is equal to the present value of two (2) Tiger Accounts held for the benefit of said children, with all of said custodial accounts to be utilized for the same purpose as stated herein.
(emphasis added). No subsequent modification of the divorce order changed this original purpose of the TIGR accounts. The accounts were to be used for college, *442 with any additional expenses paid for equally by Charles and Janet.
¶ 13. While we agree that Janet is entitled to compensation for half of the MPACT she purchased, we find that the chancellor erred in ordering this money to come from Charles. In accordance with the original judgment of divorce, the amount owed to Janet should come out of Shannon’s TIGR account, which was originally set up and funded by Charles for the sole purpose of covering Shannon’s educational expenses, “with any sums remaining” paid to Shannon after her educational expenses are paid. Janet may recover not only one-half of the cost of the MPACT tuition, but the full amount that she paid, since that amount should have originally come out of Shannon’s TIGR account. If the TIGR fund is for some reason inadequate to fully reimburse Janet, then Charles may be ordered to pay one-half of the deficiency.
¶ 14. In finding that the chancellor was in error in altering the initially ordered purpose of the TIGR accounts, we note that there appears to be some confusion in the chancellor’s order as to the original nature of the accounts. The May 2004 modification order states: “Per the Final Judgment of Divorce, [Charles] was required to ‘promptly fund an investment account, certificate of deposit, or other acceptable investment account ... for the benefit of the two minor children ... and to set up another account of equal value to the TIGR funds already in existence.’ ” We do not see where the original divorce order required Charles to set up two accounts. He was to fund one account, equal in value to the present value of the two existing TIGR accounts. The chancellor does go on to note that “these funds were supposed to be available and used for the higher education of the two minor children.” Despite acknowledging this, the chancellor held that the TIGR funds were to be given over to the girls because “the failure of the parties to cooperate to manage these funds and actually use them for the minor children’s educational needs, and Carmen’s having had the advantage of these funds herself, constitute a significant material change in the circumstances which necessitate modifying the Final Judgment as it relates to the TIGR fund account.”
¶ 15. Although it is true that Charles and Janet declined to withdraw money from the TIGR accounts previously because of the penalty attached to early withdrawal, that decision does not constitute a material change sufficient to alter the original purpose of the TIGR accounts as established by the original judgment of divorce. There is no longer any penalty for withdrawal, and any educational expenditures by Charles or Janet should be reimbursed from the girls’ TIGR accounts. The availability of these funds to Carmen also does not constitute a material change in circumstances such that the original judgment of divorce order should be modified. Carmen’s access to her own TIGR accounts does not necessitate a finding that Charles and Janet should therefore be forced to pay for all of Shannon’s educational expenses, when their original judgment of divorce clearly provided that the children’s college expenses would be paid from the TIGR accounts.
¶ 16. Although there seems to be some dispute between the parties as to whether the TIGR accounts were subject to the older Mississippi Uniform Gifts to Minors Act, Mississippi Code Annotated section 91-19-1 as amended, or the newer Mississippi Uniform Transfers to Minors Act, Mississippi Code Annotated section 91-20-1 as amended, we find that we need not address which statute is controlling because either one would have allowed the *443 withdrawal of funds for educational purposes. According to the Mississippi Supreme Court:
Clearly, under the Mississippi Uniform Transfers to Minors Act, as well as its predecessor, the Mississippi Uniform Gifts to Minors Act, [the child] may reach the assets of her account through her mother ... who is the custodian of the accounts. As custodian, [the mother] has access to the funds for [the child’s] use, and is able to withdraw them at will on behalf of [the child] for educational expenses or for any other purpose which [the mother], as custodian, deems wise and necessary.
Saliba v. Saliba, 753 So.2d 1095, 1098-99 (¶ 13) (Miss.2000) (citations omitted). We note that the holding in Saliba was that the child could not be forced to pay for her college education, but we find that Saliba is distinguishable from the case sub judice. In Saliba, the original judgment of divorce did not specify how the college would be paid, and instead dictated that a court would decide later. Id. at 1097 (¶ 7). Later, the parents asked that the child be forced to pay for college with her own funds (which were extensive), and the court ruled that the child was not required to pay for college. Id. at 1099 (¶ 13). Saliba is factually distinguishable from the case at bar, where the child’s account was specifically set up to pay for her later educational expenses. There was no question as to where the money for college was intended to come from in the original judgment of divorce.
¶ 17. Therefore, we hold that the TIGR funds should be used to pay for Shannon’s college expenses, and should not be given to Shannon until those expenses are paid. Any remaining funds will, of course, go to her. The judgment of the chancellor ordering that the TIGR funds be given over to Shannon and that Charles be forced to pay for one-half of the MPACT purchased by Janet is hereby reversed and remanded.
(2) Contempt and failure to pay child support
¶ 18. Although Janet should have been ordered to all pay past-due child support, we decline to find the chancellor in error for not holding her in contempt for failing to do so. When reviewing a lower court’s decision regarding whether to hold a party in contempt, the supreme court has held that: “contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than are we.” Morreale v. Morreale, 646 So.2d 1264, 1267 (Miss.1994) (quoting Cumberland v. Cumberland, 564 So.2d 839, 845 (Miss.1990)). The chancellor stated that Janet should not be held in contempt because “[Janet] thought that she did not owe such support for the period since Shannon came to live with her at that point and she was relying upon the advice of counsel. The Court accepts that defense.... ” It was well within the chancellor’s discretion to accept Janet’s defense. Therefore, we affirm the chancellor on this issue.

(3) Damages and harassment

¶ 19. The specific behavior that Charles complained of was Janet’s practice of writing the initials ESAD (“Eat Sh*t And Die”) on all the correspondence that she sent to him. While we do not condone Janet’s actions, we also find no legal basis entitling Charles to damages as a result of Janet’s behavior.
¶ 20. Punitive damages are a proper remedy only if a plaintiff is able to show “a willful or malicious wrong or the gross, reckless disregard for the rights of *444 others.” Boling v. A-1 Detective & Patrol Service, Inc., 659 So.2d 586, 588 (Miss.1995) (quoting Valley Forge Insurance Co. v. Strickland, 620 So.2d 535, 540 (Miss.1993)). Punitive damages “are intended ‘as an example and warning to others .... ’ ” Id. at 589 (quoting Beta Beta Chapter of Beta Theta Pi Fraternity v. May, 611 So.2d 889, 894 (Miss.1992)). We fail to see how Janet’s behavior rose to the level of a “malicious wrong” or “gross, reckless disregard” for Charles’s rights. Accordingly, we find that the chancellor did not err in denying damages to Charles for Janet’s behavior.

(I) Custody and child support

¶ 21. There are two findings that must be made in order for child custody to be altered: first, there must be proof that there is a material change in circumstances that adversely affects the welfare of the child, and second, a change in custody must be in the best interests of the child. Smith v. Jones, 654 So.2d 480, 486 (Miss.1995). The chancellor was in error when he determined that custody should be awarded back to Janet simply because Shannon visits her mother around once a month and has moved her belongings into Janet’s house. This does not constitute a material change in circumstances that adversely affects Shannon’s welfare. Shannon is away at college and does not reside with either of her parents a majority of her time. In fact, the evidence introduced below indicated that it is Charles who provides most of the support for Shannon while she is away at school. As such, we find that custody should have remained with Charles and that Janet should have been ordered to pay both future and past-due child support. Therefore, we reverse and remand on this issue.
¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ. CONCUR.

. In the judgment of divorce, the accounts are referred to as "Tiger” accounts. However, the parties, in their appellate briefs, refer to them as "TIGR” accounts. We have chosen to use the spelling utilized by the parties.