[Civ. No. 10106. First Appellate District, Division Two.—November 16, 1936.]

GERTRUDE BLAIR BRAINARD, an Insane Person, etc., Respondent, v. RICHMOND A. BRAINARD et al., Defendants; METROPOLITAN LIFE INSURANCE COMPANY (a Corporation), Appellant.

Knight, Boland & Riordan, F. Eldred Boland, J. W. Radil and Richard M. Sims, Jr., for Appellant.

Lloyd C. White for Respondent.

STURTEVANT, J.—As guardian of Mrs. Brainard, an insane person, the plaintiff recovered a judgment against the defendant on a life insurance policy, and from that judgment the defendant has appealed. The defendant makes just one point. It complains because the trial court refused

to receive certain evidence which it claims constituted a complete defense, to wit, payment of the claim sued on by the plaintiff.

Prior to May 29, 1932, Raymond L. Brainard and Gertrude B. Brainard were husband and wife, residing at Santa Cruz. On the date last mentioned Mr. Brainard died. For some years he had been an employee of the Southern Pacific Company and as such he was insured under a group policy by the defendant insurance company. At the time of his death and for some period prior thereto Mrs. Brainard was an invalid suffering from some mental disorder. She had been adjudged an incompetent person and from time to time she was committed to Agnew State Hospital. Mr. and Mrs. Brainard, the record discloses, had at least one child, Richmond A. Brainard. As recited above, Mr. Brainard, Sr., died May 29, 1932. On June 3, 1932, Richmond A. Brainard, the son, filed a petition alleging that Gertrude B. Brainard had been adjudged an insane person and committed to Agnew, but was out on probation. He further alleged that she did not on said date own any property and he asked to be appointed guardian of her person. On June 24th, after notice given and hearing had, said petition was granted and thereafter an order was signed appointing Richmond A. Brainard such guardian and later he duly qualified and commenced to act as such. In the month of June, 1932, Richmond A. Brainard commenced to take steps looking toward the collection of the amount due on his father's insurance policy. The policy specified the sum of $2,400 and provided: "If death occur while the employee is in the employ of the employer or prior to the monthly due date of the group policy next following the date the employee actually left the employ of the employer, and while the group policy is in force, the amount of insurance, if any, then in force thereunder on said employee shall be paid to Gertrude Blair Brainard beneficiary." Such steps were taken that on the 14th day of July, 1932, $2,401.68 was paid by the defendant company to "Richmond A. Brainard guardian of Gertrude Blair Brainard an insane person".

After receiving payment from the defendant, Richmond paid to his mother $1.69 and no more. He then absconded and at the time of the trial his residence was unknown.

■ The plaintiff contends that the evidence of payment to Richmond was properly excluded. Whether it was or was not is the sole question presented by this record. The general rule applicable to payments to a third person is well settled. In 1 Mechem on Agency, second edition, page 667, the author states: ''Whoever insists that he has discharged an admitted debt, by paying it to some one other than the creditor himself, has ordinarily the burden of proving that the person to whom he paid it was authorized by the creditor to receive such payment.'' In 48 C. J. 685, it is said: ''Where payment is made to a person other than the creditor, the debtor has the burden of showing that the person to whom payment was made was authorized to receive payment, or that the creditor has so acted as to be estopped to deny the existence of such authority.'' The rule is stated more completely in *Whalen* v. *Vallier,* 46 Idaho, 181 [266 Pac. 1089], at page 1092. The rule as stated by Mechem was cited and followed in *Schomaker* v. *Petersen,* 103 Cal. App. 558 [285 Pac. 342]. Furthermore, the defendant has cited nothing to the contrary and another general rule is that ''The rules applicable generally to the discharge of obligations for the payment of money by payment control as to the discharge by payment of the liability of the company under a policy of insurance.'' (33 C. J. 42.)

The defendant does not question the rules just stated.

■ However, it asks us to hold that under our statutes it was authorized to make the payment to Richmond A. Brainard in complete discharge of its liability on its policy. It quotes and italicizes section 1501 of the Probate Code as follows: *''Every guardian* must pay the ward's just debts out of the ward's personal estate and the income of his real estate, if sufficient; if not, then out of his real estate upon selling or mortgaging or giving a deed of trust upon any of his real property as hereinafter provided. *He must demand, sue for, and collect all debts due to the ward,* or, with the approval of the court, he may compromise the same and give discharges to the debtor, on receiving a fair and just settlement; and he must appear for and represent his ward in all actions and proceedings, unless another person is appointed for that purpose.'' (Italics ours.) It argues that *''Every guardian''* means every guardian of the person, of the estate, or of both. It also argues that the expression *''He*

*must demand, sue for, and collect all debts due to the ward,"*
applies to all guardians of each of said classes. Those argu-
ments we think are too broad, and, under well-settled rules
of statutory construction may not be sustained. Apparently
copying from chapter 79 of the Revised Statutes of Massa-
chusetts (1836) our legislature in 1850 adopted "An act
to provide for the appointment and prescribe the duties of
guardians." (Stats. 1850, p. 268.) That statute was very
full and complete. In section 1 it provided for the appoint-
ment of guardians of minors and in section 13 it provided
for the appointment of guardians of incompetent persons.
As to the latter appointments section 13 provided that the
appointment should be of the person and estate. No provi-
sion was made for the appointment separately of the person
or estate of either a minor or an incompetent person. Under
section 14 every person so appointed was required to furnish
a bond. Prior to any amendments it is clear that a guardian
of the person only was not provided for and that such person
would have had no rights. However, the act of 1850 was
codified. (Code Civ. Proc. (1872), part III, title XI, chap.
XIV.) Sections 13 and 14 of the act of 1850 became re-
spectively sections 1764 and 1765 of the Code of Civil Proce-
dure. No material change was made. In 1911 both sections
were amended. Section 1765 was amended to read as fol-
lows: "Every guardian appointed, as provided in the pre-
ceding section, has the care and custody of the person of
his ward and the management of all his estate, or the care
and custody of the person of his ward or the management
of all his estate, *according to the order of appointment, until
such guardian is legally discharged,* and he must give bond
to such ward in like manner and with like conditions as
before prescribed with respect to the guardian of a minor."
The expression which we have italicized was added. It but
expressly provides what was before implied. However, it
contains nothing to the effect that a guardian of the person
has any authority over the property of his ward. As to the
use of the word *"Every"* at the beginning of section 1765,
the arguments in the briefs are not at all convincing. The
legislature might have written "Every guardian appointed of
the person and estate has the care and custody of the person
of his ward and the management of all his estate; and every
guardian appointed of the estate has the care and manage-

ment of all his estate; and every guardian appointed of the person has the care and custody of his ward, until such guardian is legally discharged." We submit such expressions would have been more prolix, but the meaning would have been the same. Furthermore, the word "Every" has been the initial word of that portion of the statute since its enactment in 1850. As we have shown above, prior to 1911 it could have no application to the guardian of only the person of an incompetent, for there could not be such a position.

Again, defendant quotes from section 1501 of the Probate Code the words, "He must demand, sue for, and collect all debts due to the ward," and argues such expression means that Richmond A. Brainard had such rights. We think not. That clause was in section 16 of the act of 1850 and did not then have, and has not since been given, the meaning claimed by the defendant.

Finally, if the contention of the defendant is sustained it is in effect to hold that section 1500 of the Probate Code is to be read as though it were worded as follows: "Every guardian has the care and custody of the person of his ward and the management of his estate until legally discharged, . . ." Such construction violates the statutory rule which requires us to give some force and effect to every word. It gives no force or effect to the omitted words. Moreover, it annihilates the amendments of 1861 and 1911.

As recited above, Richmond A. Brainard's appointment was that of guardian of the person of his mother. By the order of appointment he was not required to give a bond and did not do so. The defendant asserts the omission was mere error. (*In re Chin Mee Ho,* 140 Cal. 263 [73 Pac. 1002].) We think it was not error. It was in compliance with the amended statute. When section 1765 of the Code of Civil Procedure was transferred to the Probate Code, the first part of the first sentence was made the first part of section 1500 of that code. All reference to the giving of a bond by such a guardian was omitted. As to other guardians, provision was made in section 1480 showing the amount of the bond is to be measured by the value of the personal property, etc. The change in the statute is important. As to a guardian of the person, a bond is of little, if any, im-

portance and many statutes do not require one. (Woerner's Guardianship, p. 120.) As to a guardian of the estate, the giving of the requisite bond is a condition precedent. (*Murphy* v. *Superior Court*, 84 Cal. 592 [24 Pac. 310].) As said by the court of appeals of New York in *Wuesthoff* v. *Germania Life Ins. Co.*, 107 N. Y. 580 [14 N. E. 811], at page 813: "Obviously, the object of the legislature, in requiring the guardian to give security, was the protection of the ward. The legislature was dealing with the interests of a class especially entitled to the protection of the law. It was a wise safeguard to require that a guardian, before intermeddling with the estate of the ward, should give security for its faithful administration, unless the parent dispensed with this precaution." But to uphold the contention of this defendant is to hold that the legislature repealed the provision for a bond and expressly provided that plaintiff's ward could legally be wronged by her guardian as shown by this record. We think the legislature did not do so.

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.