AMERICAN LIFE INS. CO. *v.* HAUER.

Nov. 2, 1953

No. 38885        41 Adv. S. 2        67 So. 2d 523

*Wells, Thomas & Wells, Roland D. Marble,* Jackson, for appellant.

*Holcomb & Curtis,* Clarksdale, for appellee.

LEE, J.

This was a suit in the chancery court by Mrs. Corinne W. Hauer against American Life Insurance Company to recover the proceeds of an insurance policy on the life of Jesse H. Whitworth. Issue was joined and, on final hearing, there was a decree for the complainant. The Insurance Company appealed.

The policy was taken out by Whitworth in 1944. It became lost, and on August 20, 1946, the Company issued a duplicate in which Mrs. Hauer, sister of the policy-holder was named the beneficiary. August 28th was the

date for the payment of annual premiums. All premiums had been paid up to August 28, 1950, but he failed to remit the premium due on that date. The policy provided for its forfeiture in case of nonpayment of premiums, but allowed a grace period of thirty-one days. On September 19, 1950, during the grace period, Whitworth shot himself in Memphis, Tennessee, and was placed in a hospital and remained unconscious thereafter until his death on September 29, 1950. On September 21, 1950, Mrs. Hauer wrote the Insurance Company the following letter:

"718 Leflore Ave.
"Clarksdale, Miss.
"Sept. 21, 1950

"American Life Ins. Co.
"Birmingham, Ala.

"Dear Sirs:

"Could you advise the status of policy No. 34785 as to premiums and if they are up to date.

"Thanking you for this information.

"Respectfully,
"Mrs. Corinne Hauer
"Sister of the Insured"

From its Birmingham, Alabama, office, on September 26, 1950, the Insurance Company, in reply, wrote the following letter:

"September 26, 1950

"Mrs. Corinne Hauer
"718 Leflore Ave.
"Clarksdale, Miss.
"Re: 34785·

"Dear Mrs. Hauer:

"In answer to your letter of September 21, regarding Policy No. 34785, we regret that we cannot give you the

information. We may give the information only to the insured.

"Very truly yours,
"/s/   E. B. Montgomery,
"VICE-PRESIDENT"

Mrs. Hauer testified that she did not have the policy in her possession, but made the inquiry so that she could pay the premium, if due, and that she was ready, willing and able to do so. She did not obtain the policy until after her brother's death, at which time the grace period had already expired.

It is the contention of the appellant that a beneficiary, where the right to change is reserved, is not a party to an insurance contract and has no vested interest until the death of the insured; that it was under no duty to give to the appellee the information which she requested; that the premium was not paid within the grace period; and that the benefits under the policy became forfeited.

The appellee contends that, as the beneficiary, she had the right to pay the premium; that appellant's refusal to advise her as to the status of the premiums made it impossible for her to pay the same, although she was ready, willing and able to do so, and thereby defeated her right to do so; and that appellant is estopped to declare a forfeiture under such circumstances.

It seems to be settled beyond peradventure that the beneficiary in an insurance policy, where the right to change is reserved, has no vested interest therein until the death of the insured. Lamar Life Insurance Company v. Moody, 122 Miss. 99, 84 So. 135; Bank of Belzoni v. Hodges, 132 Miss. 238, 96 So. 97; Faulkner v. Faulkner, 192 Miss. 358, 5 So. 2d 421. These cases recognized the right of the insured to pledge his policy without the consent of the beneficiary and that his will governed. See also Fleming v. Grimes, 142 Miss. 522, 107 So. 420, which conformed to the rule announced

above. These cases did not deal with the question as to whether a beneficiary may pay premiums on the policy.

■■■ The validity of a provision that nonpayment of premiums will effect a forfeiture of benefits is so widely recognized as to need no citation of authority. This Court, in New York Life Insurance Company v. Alexander, 122 Miss. 813, 85 So. 93, so held; and also, that sickness and insanity will not avoid such result. See also New York Life Insurance Company v. Morris, 137 Miss. 101, 102 So. 71. In these cases, the insurance company was in nowise to blame.

Much significance, in the decision of this case, hinges on whether or not the beneficiary had the right to pay the premiums. None of our cases withhold such right. On the contrary, 29 Am. Jur., Insurance, Sec. 424, p. 356, says: "Although there is some authority to the contrary, it is generally held that where an insured takes out a policy on his life for the benefit of another, the beneficiary, although he has no insurable interest in the life of the insured, has a right to keep the contract alive and pay the premiums thereon after the discontinuance of payment of premiums by the insured." See also 44 C. J. S., Insurance, Sec. 347, p. 1320, where the ordinary rule is said to be that premiums may be paid by anyone, including the beneficiary. In Whitehead v. New York Life Insurance Company, 6 N. E. 267, it was held that where the wife and children were the beneficiaries in policies on the life of their husband and father, they had the right, if the insured failed to pay the premiums, to pay themselves, and so continue the policies in force.

When, in Faulkner v. Faulkner, supra, it was said that "the original beneficiary had no vested rights but only an inchoate imperfect and ambulatory right prior to insured's death," the Court was dealing with the question as to whether or not the insured could and did change the beneficiary.

■■■ So, while the beneficiary cannot prevent a change in beneficiary or the encumbrance of the policy and does not have an insurable interest therein, it is clear that he "has a right to keep the contract alive and pay the premiums thereon after the discontinuance of payment of premiums by the insured." 29 Am. Jur., supra.

Since Whitworth did not pay the premium which was due on August 28, 1950, to all intents and purposes, his failure amounted to a discontinuance. Consequently Mrs. Hauer then had the right to make payment thereof. To that end, she inquired as to the "status" of the policy, that is, its state or condition, and if the premiums were "up to date." The company knew that she was the beneficiary. Hence the duty devolved upon it to inform her as to the status of the policy. Such information would have disclosed that the premium was not paid on August 28, 1950, and that, at the expiration of the thirty-one day grace period, the benefits provided for in the policy would be forfeited. But the Company declined to give such information. It refused to speak thereon.

In 19 Am. Jur., Estoppel, Sec. 55, pp. 661-2, it is said: "Estoppel by silence or inaction is often referred to as estoppel by 'standing by,' and that phrase in this connection has almost lost its primary significance of actual presence or participation in the transaction and generally covers any silence where there are a knowledge and a duty to make a disclosure. The principle underlying such estoppels is embodied in the maxim 'one who is silent when he ought to speak will not be heard to speak when he ought to be silent.' " See also 31 C. J. S., Estoppel, Sec. 87, pp. 301-5. See also Kelso v. Robinson, 172 Miss. 828, 161 So. 135; Martin v. Hartley, 208 Miss. 112, 43 So. 2d 875, and authorities there cited.

■■■ Under the proof in this case, the appellant's refusal to disclose the status of the policy prevented the payment of the premium. But it is in no position to insist on

a forfeiture where it has prevented performance of the condition. See 45 C. J. S., Insurance, Sec. 704, p. 672.

Suppose that Mrs. Hauer had tendered the requisite premium before the expiration of the grace period, surely it could not be successfully contended that the appellant would have been within its rights to decline acceptance. Her brother was unconscious, making the acquisition of knowledge as to the status of the policy impossible from him. When she turned to the only other source of such information, the appellant, it refused to comply with her request. To surmise what else she might have done to protect her interest would put a great strain on human intelligence.

Affirmed.

*Roberds, P. J., Kyle, Arrington* and *Lotterhos, JJ.,* concur.