# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CA-00247-SCT

*ROLAND F. SAMSON, III, AS GUARDIAN AD
LITEM OF JEFFREY JAKE WERNETH AND
SHELBY LEE WERNETH, MINORS*

*v.*

*UNUM LIFE INSURANCE COMPANY OF
AMERICA*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/13/2017 |
| TRIAL JUDGE: | HON. CHRISTOPHER LOUIS SCHMIDT |
| TRIAL COURT ATTORNEYS: | ROBERT P. MYERS, JR. |
| | CLIFFORD KAVANAUGH BAILEY, III |
| | MARIA MARTINEZ |
| | WILLIAM LEE GUICE, III |
| | NATHAN LAMAR PRESCOTT |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT P. MYERS, JR. |
| ATTORNEY FOR APPELLEE: | CLIFFORD KAVANAUGH BAILEY, III |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED - 05/07/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., MAXWELL AND BEAM, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     This case involves liability for misappropriation of funds in a guardianship matter.

After a mother requested life-insurance proceeds for the benefit of her two minor children

after the death of the children's father, the insurance company requested that she provide the

appropriate guardianship documentation.   The insurance company received the order

appointing the mother guardian and providing directions for the issuance of funds. But the insurance company did not issue the funds as instructed by the order, and the mother misappropriated the funds. A guardian ad litem was then appointed by the chancery court for the minor children and eventually sued the insurance company in the Harrison County Circuit Court for negligence and breach of contract.

¶2. The circuit court granted the insurance company's motion for summary judgment, holding that because the insurance company was not a party to the guardianship proceeding in chancery court, the insurance company was not subject to liability for an alleged violation of the guardianship order. We find, however, that a genuine issue of material fact exists as to the insurance company's liability and that summary judgment should not have been granted. Therefore, we reverse and remand the case for a trial on the merits.

**FACTS AND PROCEDURAL HISTORY**

¶3. Jeffrey Werneth purchased a life-insurance policy from Unum Life Insurance Company of America (Unum) in the amount of $336,000 for the benefit of his three children, including two minor children, Jeffrey and Shelby Werneth.[1] The minor children resided with their mother, Shannon, who had previously divorced their father.

¶4. On August 31, 2013, Jeffrey died and Shannon attempted to collect the policy proceeds. Unum, in receiving the request, advised her that she needed a court order establishing guardianships for the children in order for Unum to tender the policy proceeds.

---

[1] This appeal only concerns the two minor children.

2

¶5.     Shannon obtained a guardianship order from the Jackson County Chancery Court naming her guardian for both minor children.  On April 9, 2014, Unum received a copy of the guardianship order, which stated, in relevant part,

> Petitioner, Shannon Werneth, is granted Letters of Guardianship over the estates of the minor children, Jeffrey Jake Werneth and Shelby Lee Werneth; and said Shannon Werneth, as guardian, is granted authority to take possession of all property of said minor children, real and personal, tangible and intangible, wherever situated, and specifically to apply for and collect on behalf of each of the wards, funds from insurance policies of which said minors are the respective beneficiaries; and to place the funds received in separate guardianship accounts with Keesler, Ocean Springs, Mississippi, a Federally insured institution, from which funds [s]hall not be withdrawn without specific authorization of this Court.  A receipt shall be required and the insurance company shall make the check out to In the Matter of the Guardianship of Jeffrey Jake Werneth and Shelby Lee Werneth.

¶6.     On April 16, 2014, Unum issued separate drafts in the amounts of $116,973.15 each made payable to "Shannon Werneth Guardian for Jeffrey Jake Werneth Minor" and "Shannon Werneth Guardian for Shelby Lee Werneth Minor."  The policy proceeds were mailed directly to Shannon's residence.

¶7.     On April 25, 2014, Shannon presented and endorsed the checks in her individual capacity at Keesler Federal Credit Union (Keesler).  The funds were deposited into Shannon's personal account, and Shannon later misappropriated the funds, depriving the minor children of the benefit of their father's life-insurance proceeds.

¶8.     The chancery court discovered Shannon's misappropriation and appointed Robert Myers, Jr., as guardian ad litem for the minor children to investigate "the payment of life

3

insurance policy proceeds by Unum" and to file "appropriate legal action, to recover the guardianship funds . . . ."

¶9. In May 2016, Myers filed a complaint against Unum and Keesler in the Harrison County Circuit Court, alleging negligence, breach of contract, and tortious breach of contract.

¶10. After answering the complaint, both Keesler and Unum filed motions for summary judgment. After hearing oral argument and receiving supplemental briefing, the trial court granted Unum's motion, dismissing all claims against Unum with prejudice. The trial court held that "Unum was not a party to the guardianship proceeding and, therefore, cannot be subjected to liability for an alleged violation of the Guardianship Order." The trial court concluded,

> Simply put, because Unum was not a party to the guardianship proceedings, the Guardianship Order did not impose any additional duty or obligation on Unum over and above its contractual duties, which were not breached by Unum. It only granted rights to Shannon to receive the funds as guardian and imposed duties on her regarding the handling of the funds.

¶11. The claims against Keesler remained pending. And in September 2018, an agreed order was entered substituting Roland Samson as guardian ad litem and as the plaintiff in this action.[2] Keesler and Samson ultimately reached a settlement agreement in the case.

---

[2] For the sake of brevity, we refer to the guardian ad litem and the minor children as the plaintiffs.

4

¶12. In January 2019, the trial court entered an agreed order and final judgment, both dismissing Keesler and making Unum's dismissal a final and appealable order. Samson timely appealed the trial court's grant of summary judgment to Unum.

¶13. Unum maintains that the trial court correctly concluded that Unum's obligations under the policy were contractual; that it fulfilled its contractual obligations under the policy; and that the guardianship order, entered in a proceeding in which Unum was not a party, imposed no additional legal obligation on Unum. Thus, Unum argues, it cannot be subjected to liability for not issuing the checks as stated in the guardianship order.[3]

## DISCUSSION

¶14. We review a trial court's decision to grant or deny a motion for summary judgment de novo, "viewing the evidence in the light most favorable to the party against whom the motion has been made." *Johnson v. Goodson*, 267 So. 3d 774, 776 (Miss. 2019) (quoting *Maness v. K & A Enters. of Miss., LLC*, 250 So. 3d 402, 409 (Miss. 2018)). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law." Miss. R. Civ. P. 56(c).

### I. Liability

---

[3] Unum also claims that the plaintiffs are judicially estopped from arguing that it did not properly issue the checks. We, however, decline to address this claim because Unum raises it for the first time on appeal.

¶15. This Court has held that insurers owe a general duty of care to the insured, independent of contractual obligations, "to use that degree of diligence and care with reference thereto which a reasonably prudent man would exercise in the transaction of his own business." *Security Ins. Agency, Inc. v. Cox*, 299 So. 2d 192, 194 (Miss. 1974); *see also United Am. Ins. Co. v. Merrill*, 978 So. 2d 613, 628, 636-37 (Miss. 2007) (because "[a]n insurance company has exclusive control over evaluation, processing, and denial of claims[,]" Mississippi law imposes a duty on the company to exercise "that degree of care and diligence which a man of ordinary care and prudence would exercise in the management of his own business" (quoting *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1189 (Miss. 1990))).[4]

---

[4] *See also Valley Forge Ins. Co./CNA Ins. Co. v. Strickland*, 620 So. 2d 535 (Miss. 1993). There, this Court held that an insurance company that had paid uninsured-motorist benefits for injuries sustained by the child of the insured acted negligently when it wrongfully asserted subrogation rights against the tortfeasor's insurer. *Id.* at 540.

> By virtue of its relationship with Tina Strickland, [Valley Forge] owed her a duty not to interfere with her recovery of amounts due to her. *This duty transcends the contract between Valley Forge and Darlene Strickland.* Valley Forge breached this duty by asserting a meritless subrogation claim.

*Id.* at 540. (emphasis added). We note that *Strickland* concerned a case of gross negligence on the part of the insurance company "in filing and maintaining a groundless lawsuit, to the detriment of Tina Strickland." *Id.* at 540. Although we do not find that to be the case here, *Strickland* is nevertheless instructive for its recognition that an insurer's conduct may give rise to an action for breach of contract or to an action in tort. *See id.* at 540 (adding further that in the particular case before it, "the distinction between tort and contract actions is largely academic").

¶16.    This duty also extends, in certain cases, to the beneficiary named in an insurance policy. *See, e.g.*, **Am. Life Ins. Co. v. Hauer**, 218 Miss. 560, 67 So. 2d 523, 525-26 (1953). In **Hauer**, this Court held that an insurance company, which knew of the beneficiary named in a life-insurance policy, owed a duty to inform the beneficiary as to the status of the policy when the beneficiary timely inquired about the policy. **Id.**

> The company knew that [Corrine Hauer] was the beneficiary. Hence the duty devolved upon it to inform her as to the status of the policy. Such information would have disclosed that the premium was not paid on [the due date], and that, at the expiration of the thirty-one day grace period, the benefits provided for in the policy would be forfeited. But the Compnay declined to give such information. It refused to speak thereon.

*Id.* at 526.

¶17.    While we know of no Mississippi case directly analogous to the case before us, a Tennessee case with similar facts is cited by the plaintiffs *In re Guardianship of Tatum*, No. W2001-00859-COA-R3-CV, 2002 WL 1751247 (Tenn. Ct. App. Feb. 4, 2002). Although **Tatum** is an unpublished opinion pursuant to Rules 11 and 12 of the Rules of the Court of Appeals of Tennessee, we nonetheless find it both instructive and persuasive. Further, the Tennessee Supreme Court has since recognized **Tatum** approvingly in **Hood v. Jenkins**, 432 S.W.3d 814 (Tenn. 2013).[5]

---

[5] In **Hood**, the Tennessee Supreme Court spoke to **Tatum** as follows:

In contrast to the circumstances in **Tatum**, the evidence here established that Old Line made every effort to pay the claim in a manner that was consistent with the terms of the insurance policy, the Proof of Death Claimant's Statement, and the order of financial guardianship entered by the juvenile

7

¶18. In *Tatum*, a mother petitioned the probate court for guardianship of her minor daughter following the death of daughter's father. *Tatum*, 2002 WL 1751247, at *1. The daughter was named beneficiary of various insurance benefits available from her father's employer, BellSouth Telecommunications, Inc. *Id.* By order, the probate court appointed the mother as general guardian and directed the guardian's attorney to exercise joint control of the guardianship estate with the guardian. *Id.* That same day, a guardian bond was executed as surety for the guardian by a Maryland bonding company. *Id.*

¶19. The guardian's attorney notified BellSouth of the joint-control provision and requested that the funds be sent to him to be deposited in the guardianship accounts. *Id.* BellSouth ignored the request and sent a check payable to the mother, who misappropriated the funds. *Id.* Afterwards, the probate court removed the mother as guardian and appointed a substitute guardian. *Id.*

¶20. The substitute guardian obtained a judgment against the Maryland bonding company, which in turn had filed a cross-claim against the mother, and a third-party complaint against BellSouth, alleging that BellSouth "negligently and in breach of its duty sent the guardianship funds to [the mother]." *Id.* Following a bench trial, the probate court granted judgment against BellSouth in favor of the bonding company. *Id.* at *2.

---

court. Moreover, our conclusion is that Old Line conducted a reasonably prudent investigation when it made further inquiry into the circumstances of the claim.

*Hood*, 432 S.W.3d at 828 (citing *Tatum*, 2002 WL 1751247, at *4).

¶21. The Tennessee Court of Appeals affirmed. The *Tatum* court rejected BellSouth's defense that "an insurer is discharged of liability when it makes good faith payments to a purported beneficiary without notice of competing claims." *Id.* at *3-4 (internal quotation marks omitted) (quoting *Atkins v. Sec. Conn. Life Ins. Co.*, No. 02A01-9710-CV-00257, 1998 WL 900057, at *2 (Tenn. Ct. App. Dec. 28, 1998)). Distinguishing *Atkins*, the *Tatum* court found that "BellSouth was fully informed that joint control was provided by the probate court, and if BellSouth had complied with the attorney's request, the funds would not have been misappropriated by the guardian." *Id.* at *4. The *Tatum* court said that "[i]f there had been some confusion on the part of BellSouth, further inquiry would have resolved this confusion and . . . prevent[ed] a loss from occurring." *Id.* at * 4. *Tatum* concluded that "BellSouth's deliberate choice to ignore the court order and the attorney's request allowed the guardian to misappropriate the funds." *Id.*

¶22. Unum argues that *Tatum* might have some relevance here if Unum had issued and delivered the check to someone who had not been appointed guardian. And both Unum and the dissent contend that, unlike *Tatum*, the guardianship order appointed Shannon as sole guardian over the estates of the minor children. Thus, according to Unum and the dissent, even if the check had been made payable to "In the Matter of the Guardianship of Jeffrey Jake Werneth and Shelby Lee Werneth," Shannon had sole authority, under the Letters of Guardianship to take possession of the funds on behalf of the minors.

9

¶23.    The argument that *Tatum* is dissimilar based on the authority granted to Shannon in the guardianship order is not supported by the language of the guardianship order itself. While the guardianship order granted Shannon authority "to take possession of all property of [the] minor children, real and personal, tangible and intangible, wherever situated," it did not grant Shannon authority to take possession of the underlying insurance funds owed to the minor children.  Rather, the guardianship order only provided Shannon authority "to apply for and collect on behalf of each of the wards, funds from insurance policies of which [the] minors are the respective beneficiaries . . . ."  The guardianship order further instructed that the insurance funds received were to be placed  in separate guardianship accounts at Keesler from which no withdrawals would be allowed without specific authorization from the chancery court.  And the guardianship order specifically instructed that the insurance company "shall make the check out to 'In the Matter of the Guardianship of Jeffrey Jake Werneth and Shelby Lee Werneth.'"

¶24.    Similar to the situation in *Tatum*, in which it was found that BellSouth was put on notice by the guardianship attorney about the joint-control provision directed by the probate court and how the insurance funds should be disbursed, the plaintiffs have presented evidence that Unum was put on notice by a guardianship order instructing how the insurance funds for the minor children were to be disbursed.

¶25.    This is all that the guardianship order constitutes in this case as far as Unum is concerned—notice of the order's directive.  The order does not subject Unum to a contempt

10

action for violation of the order. And the order does not in and of itself create a legal duty for Unum that would otherwise not exist at law.

¶26. Unum's duty in this case, as mentioned above, arises from the longstanding Mississippi principle that insurers owe a general duty of care to the insured or the beneficiary, independent of contractual obligations, "to use that degree of diligence and care with reference thereto which a reasonably prudent man would exercise in the transaction of his own business." *Cox*, 299 So. 2d at 194; *Hauer*, 218 Miss. 560, 67 So. 2d at 525-26. Independent of its contractual obligation to pay Jeffrey's beneficiaries, Unum owed a general duty of care to properly deliver the guardianship funds for the beneficiaries.

¶27. A leading insurance treatise provides as follows when dealing with payments to guardians:

> The insurer should require a guardian to provide the court documents that establish the guardianship and define the guardian's powers, especially where the court order directs the payment of settlement funds. For example, the order may require that the funds be made payable to Mr. X, as guardian of John X, his son in trust, and the ABC Bank, and payment made to the guardian only can result in liability to the insurer.

4 *Couch on Insurance* § 61:10 (3d ed.), Westlaw (database updated Dec. 2019). *Couch* also instructs that

> A particularly problematic situation involves the payment of proceeds to the parent or other guardian of a minor or incompetent person entitled to receive them. Payment to the guardian of the person of a beneficiary does not constitute a defense in an action by the beneficiary to recover the proceeds of the policy where the guardian of the person has no authority over the property of his or her ward.

11

*Id.* (citing ***Brainard v. Brainard***, 62 P.2d 403 (Cal. Dist. Ct. App. 1936)).[6]

¶28.    Here, the chancery court established a guardianship for the insurance funds intended by Jeffrey for his beneficiaries—two minor children at the time of his death.  The chancery court instructed that the guardianship funds be placed in separate restricted guardianship accounts and specified how the insurance checks were to be made payable, i.e., "In the Matter of the Guardianship of Jeffrey Jake Werneth and Shelby Lee Werneth."  No bond was required since Shannon was given no authority over the underlying funds represented by the checks.  Miss. Code Ann. § 93-13-17 (Rev. 2018).

¶29.    By issuing the checks to "Shannon Werneth Guardian," Unum allegedly created an unnecessary  risk that Shannon would be held out as having authority she did not have over the guardianship funds.  Accordingly, we find that a genuine issue of material fact precluding summary judgment exists as to Unum's potential liability for not abiding by the guardianship order's instruction.

¶30.    We find no merit to Unum's contention that Mississippi Code Section 75-3-110(c)(2)(i) (Rev. 2016), Mississippi's counterpart to Section 3-110 of the Uniform Commercial Code (U.C.C.), makes execution of the chancery court's order possible by

---

[6] In ***Brainard***, it was held that an insurance company was not absolved from liability when it issued a life-insurance check styled, "Richmond A. Brainard guardian of Gertrude Blair Brainard an insane person."  ***Brainard***, 62 P.2d at 404 (internal quotation marks omitted).  Even though Richmond had been appointed Gertrude's guardian, Richmond did not have authority over Gertrude's property because a requisite bond had not been given.  *Id.* at 405.

12

permitting guardians like Shannon to negotiate checks on behalf of the estate or the parties she represents. Because the children are minors, the chancery court's order placed Shannon—as their guardian—in this position for the specific purpose of collecting these funds. Unum contends that upon its receipt of the requested documentation of the guardianship, Unum appropriately issued the checks to Shannon "as guardian for" each minor child pursuant to Section 75-3-110(c)(2)(i).[7]

¶31. By its own terms, Section 75-3-110 is designed to aid in the expedient flow of commercial paper. Section 75-3-110 neither contemplates nor concerns the authority a guardian may or may not have over the underlying funds represented by an insurance check. As the official comments to U.C.C. 3-110 point out, "[Subsection (c)(2)] merely determines who can deal with an instrument as a holder. It does not determine ownership of the

---

[7] Section 75-3-110(c)(2)(i) provides as follows:

(c) A person to whom an instrument is payable may be identified in any way, including by name, identifying number, office, or account number. For the purpose of determining the holder of an instrument, the following rules apply:
. . . .

(2) If an instrument is payable to:

(i)    A trust, an estate, or a person described as trustee or representative of a trust or estate, the instrument is payable to the trustee, the representative, or a successor of either, whether or not the beneficiary or estate is also named.

Miss. Code Ann. § 75-3-110(c)(2)(i).

13

instrument or its proceeds." U.C.C. § 3-110 cmt. 3 (Am. Law Inst. & Unif. Law Comm'n), Westlaw (database updated Sept. 2017).[8]

¶32. Indeed, the aim and intent of Section 75-3-110 is all the more reason why insurers like Unum must exercise due care to heed a court order's directive when issuing checks in guardianship matters. *See, e.g.*, *Couch on Insurance, supra*, at § 61:10.

¶33. We also disagree with the contention that the circumstances in *Tatum* are distinguishable from those alleged here. We point out that in *Tatum*, BellSouth issued the insurance check in similar fashion to how Unum issued the checks here, by denoting "guardian" on the check. *Tatum*, 2002 WL 1751247, at *3 ("BellSouth sent guardianship funds in the form of a check made payable to 'Ashley J. Tatum, Rosalyn W. Felder Guardian of'"). While Tennessee's version of U.C.C. 3-110, which is found in Tennessee Code Section 47-3-110, apparently was not presented or argued in *Tatum*, we see no indication or hint in our reading of *Tatum* that the result would have been any different had the Tennessee statute been raised.

¶34. We point out that the mother in *Tatum*, like Shannon, had also been appointed guardian of the estate of the minor child. *Id.* at *2.[9] But unlike Shannon, the mother in

_____

[8] Though Mississippi has not adopted the U.C.C.'s official comments, this Court has relied on them in the past for clarification. *See **Great S. Nat'l Bank v. McCullough Envt'l Servs., Inc.***, 595 So. 2d 1282, 1287 (Miss. 1992) ("Because the Mississippi Legislature has adopted the [U.C.C.], perusal of the official 'Comments' to the corresponding [U.C.C.] section would shed further light . . . .").

[9] The mother in *Tatum* had also been appointed guardian of the person of the minor child. *Tatum*, 2002 WL 1751247, at *2. The guardianship order here did not mention

14

*Tatum* was given joint control of the guardianship funds alongside the attorney named by the guardianship order. *Id.* Not so here. By directing that the checks were to be made payable to the guardianship accounts, solely, the chancery court made the guardianship funds even more restricted than those at issue in *Tatum*.

¶35. Even further, the Tennessee Supreme Court in *Hood* emphasized the importance of guardianship orders in these type of circumstances. "Persons, especially those who are not parties to lawsuit, must be able to rely on judgments and orders of the courts of this state." *Hood*, 432 S.W.3d at 829 (emphasis omitted) (internal quotation marks omitted) (quoting *Tantaris v. Boehms*, No. 89-178-II, 1989 WL 137853, at *6 (Tenn. Ct. App. Nov. 17, 1989)). "To hold otherwise would undermine the integrity of final judgments issued by the courts of jurisdiction." *Id.* (citing *Wilson v. Wilson*, 984 S.W.2d 898, 904 (Tenn. 1998) (equating the enforcement of a court order with the integrity of the judicial process)). *Id.*[10]

___

guardian of the person, which is of no moment in this instance given that Shannon is the children's natural mother.

[10] *Hood* found that the insurance company had reasonably relied on a "facially valid" guardianship order, which had expressly appointed the half-sister of a minor beneficiary named in the insurance policy as both guardian of the person and financial guardian of the minor. *Hood*, 432 S.W.3d at 827. *Hood* noted,

> Upon receiving this additional documentation, [the claims examiner], concerned because the word "Financial" was handwritten, faxed the documents she had received from the agent to the Juvenile Court Clerk for Grainger County, "requesting a document in writing that this Petition for 'Financial' guardianship is valid." In response, she received an "Exemplification," signed by the clerk and the juvenile court judge, which provided that the order appointing "Erik Hood Financial Guardian" was a true and perfect copy of the original order in the juvenile court. After reviewing

¶36.    While the insurance company in *Hood* made the check payable in a similar manner as Unum did here, the guardianship order in *Hood* did not specify how the check was to be made payable.  *Hood*, 432 S.W.3d at 818-19.  And unlike in *Hood*, no evidence has been presented that Unum conducted any further inquiry into the matter after it received the guardianship order.  *See id.* at 827 ("[W]e hold that Old Line was not only entitled to rely upon the facially valid order of financial guardianship, but that the evidence also established that, prior to payment, Old Line acted in good faith by conducting an investigation into the adequacy of the documentation in the juvenile court judgment.").

¶37.    Similar to *Hood*, we have a facially valid court order; but, unlike in *Hood*, we have a specific instruction provided by the court order with which Unum failed to comply.  Thus, we find *Hood* distinguishable to that extent.  And although we find that the circumstances in *Hood* are distinguishable, we agree with *Hood*'s admonition regarding court orders in general, the integrity of which must be protected by all means.

¶38.    Lastly, Unum argues that its only legal obligations in this case were contractual, which Unum fulfilled by issuing the benefit checks to the court-appointed guardian for the minor beneficiaries.  We disagree.  Again, this Court has held that, as a matter of law in this state,

---

the exemplification with the other documentation and consulting with her supervising manager, [the claims examiner] issued a check in the amount of $100,854.88, which included interest from the date of death, to "Casey Jenkins as financial guardian for the benefit of Erik Christopher Hood, minor beneficiary."

*Id.* at 820.

insurers owe a general duty of care to the insured, independent of contractual obligations "to use that degree of diligence and care with reference thereto which a reasonably prudent man would exercise in the transaction of his own business." *Cox*, 299 So. 2d at 194.

¶39. For the sake of argument, however, we think the plaintiffs also presented a viable breach-of-contract claim.[11] Jeffrey purchased a life-insurance policy from Unum for the benefit of his children. In turn, Unum promised Jeffrey that his named beneficiaries would "receive[] the Death Benefit upon [Jeffrey's] death." That purportedly did not happen for the above-claimed reasons.

¶40. We point out that the plaintiffs alleged in their complaint the same harm under both a breach-of-contract theory and negligence theory. The trial court granted summary judgment in favor of Unum on both claims. On appeal, however, the plaintiffs narrow their argument to the theory of negligence. And based on our de novo review of all of the evidence presented thus far in this case, we find that genuine issues of material fact remain that preclude us from finding that, as a matter of law, Unum did not breach the duty of care it owed to the minor beneficiaries named in Jeffrey's life-insurance policy.

**CONCLUSION**

---

[11] We point out that the essential difference between a tort theory and a contract theory is the source of the parties' duties. Contractual obligations arise from promises made between the parties, where as tort obligations generally arise from duties imposed by law as a matter of public policy. W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 92 (5th ed. 1984). And as *Strickland* instructs, an insurer's conduct may give rise to an action for breach of contract or to an action in tort. *Strickland*, 620 So. 2d at 539.

¶41. We reverse the Harrison County Circuit Court's grant of summary judgment in favor of Unum, and we remand the case for a trial on the merits.

¶42. **REVERSED AND REMANDED.**

**KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, CHAMBERLIN AND ISHEE, JJ., CONCUR. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION. RANDOLPH, C.J., NOT PARTICIPATING.**

**GRIFFIS, JUSTICE, DISSENTING:**

¶43. The summary-judgment motion considered one issue—whether Unum can be subject to liability for the alleged violation of an order in a legal proceeding to which it was not a party.

¶44. The circuit judge granted summary judgment and issued the following thoughtful and correct analysis:

> Plaintiff asserts that there is a genuine issue of material fact concerning any negligence on the part of Unum for its failure to issue payment of the policy proceeds as instructed by the Guardianship Order, i.e. a check made payable to "In the Matter of the Guardianship of Jeffrey Jake Wemeth and Shelby Lee Werneth." This Court disagrees. Unum was not a party to the guardianship proceeding and, therefore, cannot be subject to liability for an alleged violation of the Guardianship Order. *See **Zenith Radio Corp. v. Hazeltine Research, Inc.**,* 395 U.S. 100, 110, 89 S. Ct. 1562, 23 L. Ed. 2d 129 (1969) ("It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process."); ***Vanderbilt v. Vanderbilt***, 354 U.S. 416, 77 S. Ct. 1360, 1 L. Ed. 2d 1456 (1957) ("[l]t has long been the constitutional rule that a court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant . . . ."); ***Martin v. Wilks***, 490 U.S. 755, 762, 109 S. Ct. 2180, l 04 L. Ed. 2d 835 (1989) ("It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process. . . . A

18

judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings.").

Simply put, because Unum was not a party to the guardianship proceedings, the Guardianship Order did not impose any additional duty or obligation on Unum over and above its contractual duties, which were not breached by Unum. [Footnote 1] It only granted rights to Shannon to receive the funds as guardian and imposed duties on her regarding the handling of the funds. For these reason, the Court finds that there exists no issue of material fact that would preclude summary judgment in Unum's favor.

[Footnote 1 - Unum issued the checks in accordance with Miss. Code Ann. § 75-3-l l0(c)(2).]

(Citations omitted.)

¶45. The circuit judge actually made three legal rulings. First, the circuit judge ruled that "the Guardianship Order did not impose any additional duty or obligation on Unum over and above its contractual duties . . . ." Second, the circuit judge ruled that the "contractual duties . . . . were not breached by Unum." And, third, the circuit judge ruled that the guardianship order "only granted rights to Shannon to receive the funds as guardian and imposed duties on her regarding the handling of the funds."

> 1. *Whether the guardianship order imposed any additional duty or obligation on Unum.*

¶46. The circuit judge ruled that the guardianship order did not impose any additional duty or obligation on Unum over and above its contractual duties. As to this issue, the plaintiff cites no authority to support a finding that the circuit court's conclusion was incorrect. In fact, the plaintiff does not even attempt to argue or distinguish the circuit court's analysis. Therefore, the plaintiff is procedurally barred from challenging the circuit court's conclusion

19

on appeal. *Jourdan River Estates, LLC v. Favre*, 278 So. 3d 1135, 1147 (Miss. 2019) (appellant waived argument against dismissal by failing to assign as error or make any argument respecting portion of circuit court's order); *Rex Distrib. Co., Inc. v. Anheuser Busch, LLC*, 271 So. 3d 445, 452 (Miss. 2019) ("[f]ailure to cite legal authority in support of an issue is a procedural bar on appeal." (quoting *Webb v. DeSoto Cty.*, 843 So. 2d 682, 685 (Miss. 2003))).

¶47.    The majority, like the plaintiff, cites no authority and makes no attempt to distinguish the circuit court's analysis. Nevertheless, the plaintiff argues, and the majority rules, that the guardianship order created a duty or obligation by Unum, although Unum was not a party to the chancery-court proceeding.[12] We should examine the authority cited by the chancellor.

¶48.    "It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110, 89 S. Ct. 1562, 23 L. Ed. 2d 129 (1969) (citing *Hansberry v. Lee*, 311 U.S. 32, 40-41, 61 S. Ct. 115, 117, 85 L. Ed. 22 (1940)). "The consistent constitutional rule has been that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant." *Id.* The parties in *Zenith* agreed that a subsidiary and its parent corporation would be considered one entity for purposes of the litigation, although the parent

_____

[12] At the hearing, the plaintiff's attorney made it clear that there was no claim against Unum for contempt because of the violation of the guardianship order, so the duty may not stem from Unum's contempt of court.

was not a named party. Zenith subsequently filed a counterclaim against the subsidiary and obtained a judgment, which was entered against both the parent and the subsidiary. The United States Supreme Court held the stipulation was not "an adequate substitute for the normal methods of obtaining jurisdiction over a person or a corporation" and affirmed the setting aside of the judgment for damages and an injunction entered against the parent, which was not a party to the proceeding. *Id.*

¶49. In *Vanderbilt v. Vanderbilt*, 354 U.S. 416, 77 S. Ct. 1360, 1 L. Ed. 2d 1456 (1957), the husband obtained an ex parte divorce in Nevada. The wife was not served with process and did not appear before the divorce court. The United States Supreme Court held that "[i]t has long been the constitutional rule that a court cannot adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant" and that the Nevada divorce decree was void to the extent that it purported to affect the wife's right to support. *Vanderbilt*, 354 U.S. at 418-19; *see also Martin v. Wilks*, 490 U.S. 755, 762, 109 S. Ct. 2180, 104 L. Ed. 2d 835 (1989) ("'[I]t is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.' A judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." (citations omitted)), *superseded by statute as stated in Landgraf v. USI Film Products*, 511 U.S 244, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994).

21

¶50.    In *Alemite Manufacturing Corporation v. Staff*, Judge Learned Hand summarized

the scope of an injunction against a nonparty, as follows:

> no court can make a decree which will bind any one but a party; a court of equity is as much so limited as a court of law; it cannot lawfully enjoin the world at large, no matter how broadly it words its decree. If it assumes to do so, the decree is pro tanto brutum fulmen, and the persons enjoined are free to ignore it. It is not vested with sovereign powers to declare conduct unlawful; its jurisdiction is limited to those over whom it gets personal service, and who therefore can have their day in court.

*Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832-33 (2d Cir. 1930).

¶51.    Based on these cases, the Guardianship Order could not impose any additional duty

or obligation on Unum.  Unum also cites the following Mississippi cases that are consistent

with *Zenith Radio*, *Vanderbilt*, *Martin*, and *Staff*.

¶52.    In *Coleman v. Smith*, 124 Miss. 604, 87 So. 7, 7 (1921), this Court held that a

chancery-court order requiring specific performance of a contract was not effective as to a

party who was not a party to the action.  *Id.*

¶53.     In *Trustees of Geeville Consolidated School v. Gordon*, 185 Miss. 739, 189 So. 97

(1939), the plaintiff sought a writ of mandamus requesting that the trustees of a school

district file a petition with the board of supervisors to issue notes and certificates of

indebtedness for the payment of certificates held by the plaintiff.  The circuit court granted

the relief sought by the plaintiff and in its judgment provided directions for the board of

supervisors to follow after the petition was filed by the trustees.  On appeal, this Court

affirmed the circuit court's ruling, but found the circuit court had gone too far "in including

22

in its judgment an order directing the board of supervisors what to do" when the petition was filed. *Id.* at 98. The court held that since the board of supervisors was not made a party to the proceeding, it was "in no way bound" by the court's directions in the order. *Id.*

¶54. In *State ex rel. Patterson v. Land*, 231 Miss. 529, 95 So. 2d 764, 770 (1957), this Court held that the chancery-court findings and decree ordering a candidate to be placed on the election ballot were not binding on the State or the attorney general since they were not parties to the action.

¶55. In *Roberts v. James Manufacturing Company*, the Court held that a nonparty could not be bound by a stipulation that he did not agree to and that the court's adjudication as to that stipulation was ineffective and not binding on the non-party:

> Parties cannot by stipulation affect any right but their own and persons not parties to the stipulation are not bound by it. The rights of parties to the action who do not join in the stipulation are not bound thereby. We are of the opinion, therefore, that Roberts, who made no appearance whatsoever in the lower court, was not bound by any stipulation agreed to by the other defendants and the plaintiff. Any adjudication based upon a stipulation to which Roberts was not a party is ineffective as to him.

*Roberts v. James Mfg. Co.*, 197 So. 2d 808, 811 (Miss. 1967) (citation omitted).

¶56. In *Smith v. Watson*, 425 So. 2d 1030, 1033 (Miss. 1983), this Court held that a chancery-court decree awarding custody to a natural parent was not binding on the grandparent or aunt unless they were made parties to the original custody suit.

¶57. In *Williamson v. Daniels*, 748 So. 2d 754, 758 (Miss. 1999), a shooting victim sued the mother of a minor who shot and paralyzed the victim, alleging negligent supervision. As

part of his proof, the plaintiff sought to introduce a curfew order imposed on the minor by the youth court. The parent was present when the youth-court order was entered and had notice of it. This Court held that the trial court properly excluded the curfew order because it was not binding on the parent and would have improperly implied that she had a legal duty greater than the duty imposed on all parents to control their minor children. *Id.* at 758.

¶58. I find this issue procedurally barred for the failure to cite legal authority. *Rex Distrib. Co.*, 271 So. 3d at 452. If we ignore the procedural bar and consider this issue, however, I agree with the circuit court. The United States Supreme Court and Mississippi cases cited establish that the Guardianship Order could not impose any additional duty or obligation on Unum, a nonparty to the chancery-court proceedings.

¶59. The majority's holding is premised on the conclusion that Unum owed and breached some "general duty of care to the insured, independent of contractual obligations . . . ." Maj. Op. ¶ 15. The majority only states that a general duty of care is owed but does not identify what general duty of care Unum breached or violated.[13]

¶60. The only possible breach asserted is that Unum wrote the checks payable to

"Shannon Werneth Guardian for Jeffrey Jake Werneth Minor"

---

[13] Although not cited by the plaintiff, the majority cites *Valley Forge Insurance Company/CNA Insurance Company v. Strickland*, 620 So. 2d 535, 540 (Miss. 1993) for the proposition that "[Valley Forge] owed her a duty not to interfere with her recovery of amounts due to her. This duty transcends the contract." The majority does not explain the relevance of *Strickland* to this case. Certainly, there is no allegation that Unum interfered with the plaintiff's recovery of amount due or that Unum has acted in any manner as Valley Forge Insurance Company did in *Strickland*. *Strickland* is neither relevant nor instructive.

24

> "Shannon Werneth Guardian for Shelby Lee Werneth Minor"

And the guardianship order required the checks be payable to

> "In the Matter of the Guardianship of Jeffrey Jake Werneth and Shelby Lee Werneth."

¶61. The majority cites no Mississippi authority for its conclusion.[14] Instead, the majority cites an unpublished Tennessee Court of Appeals opinion, *In re Guardianship of Tatum*, No. W2001-00859-COA-R3-CV, 2002 WL 1751247 (Tenn. Ct. App. Feb. 4, 2002). But *Tatum* is distinguishable. The order appointing the guardian *specifically* appointed the guardian and stated that "Joint control is with Philip Cooper, Atty." *Id.* at *1 (emphasis added).

¶62. Because the order clearly indicated that the guardian was not in sole or complete control, the court found that "BellSouth was fully informed that *joint control* was provided for by the court, and if BellSouth had complied with the attorney's request, the funds would not have been misappropriated by the guardian." *Id.* at *4 (emphasis added). The court concluded that "BellSouth's deliberate choice to ignore the court order and the attorney's

---

[14] Although not cited by the plaintiff, the majority cites *American Life Ins. Co. v. Hauer*, 218 Miss. 560, 67 So. 2d 523, 525-26 (1953), for the proposition that "this Court held that an insurance company who knew of the beneficiary named in a life-insurance policy, owed a duty to inform the beneficiary as to the status of the policy when the beneficiary timely inquired about the policy." Maj. Op. ¶ 15 n.4 (citing *Am. Life Ins. Co. v. Hauer*, 218 Miss. 560, 67 So. 2d 523, 525-26 (1953)). *Hauer* is neither relevant nor instructive. There is no allegation here that Unum declined to give information to the beneficiary.

25

request allowed the guardian to misappropriate the funds." ***Id.*** at *4. BellSouth was liable because the court found that it had assisted in the misappropriation of funds by only listing the guardian as the payee and by disregarding the joint control clearly stated in the order by not including Philip Cooper's name on the check as a joint payee. ***Id.***

¶63. Such was not the case here. ***Tatum*** might have some relevance if Unum had issued and delivered the checks to someone who had not been appointed guardian, but that is not what happened. Unlike ***Tatum***, the guardianship order here clearly appointed Shannon as the sole guardian over the estates of the minor children. In fact, the guardianship order specifically authorized Shanon to "to take possession of all property of said minor children." Unum made the checks payable to Shannon, and the checks *restricted payment* to Shannon in her fiduciary role as guardian.

¶64. The majority also cites the Tennessee Supreme Court decision in ***Hood v. Jenkins***, 432 S.W.3d 814, 828 (Tenn. 2013). But the ***Hood*** court distinguished ***Tatum*** on the basis of the "joint control" provision in the guardianship order. ***Id.*** Further, in ***Hood***, the Tennessee court held in favor of the insurance company:

> Because the evidence demonstrated that Old Line [Insurance Company] acted in good faith by its reliance upon the facially valid order of the Juvenile Court for Grainger County before disbursing the insurance proceeds to the guardian, it did not breach its contractual duties. The $86,842.37 judgment in favor of Erik Hood against Old Line is reversed, and the corresponding cross-claim in favor of Old Line against Casey Jenkins is vacated. Costs of this appeal are taxed to The Old Line Life Insurance Company of America and its surety, for which execution may issue if necessary.

*Id.* at 829. Just as in **Hood**, the guardianship order specifically authorized Shannon to "to take possession of all property of said minor children." The checks indicated that the payment was restricted to Shannon as "guardian." **Hood** supports Unum's position in this litigation.

¶65. *Couch on Insurance* does not support the majority's conclusion. The majority cites *Couch* for instruction "when dealing with payments to guardians":

> The insurer should require a guardian to provide the court documents that establish the guardianship and define the guardian's powers, especially where the court order directs the payment of settlement funds." For example, the order may require that the funds be made payable to Mr. X, as guardian of John X, his son in trust, and the ABC Bank, and payment made to the guardian only can result in liability to the insurer.

4 *Couch on Insurance* 3d § 61:10 (3d ed.), Westlaw (database updated Dec. 2019). The majority also cites *Couch* for this proposition:

> A particularly problematic situation involves the payment of proceeds to the parent or other guardian of a minor or incompetent person entitled to receive them. Payment to the guardian of the person of a beneficiary does not constitute a defense in an action by the beneficiary to recover the proceeds of the policy where the guardian of the person has no authority over the property of his or her ward.

*Id.* (citing **Brainard v. Brainard**, 62 P.2d 403 (Cal. Dist. Ct. App. 1936)).[15]

_____

[15] Although not cited by the plaintiff, the majority cites **Brainard** for the proposition that "[e]ven though Richmond had been appointed Gertrude's guardian, Richmond did not have authority over Gertrude's property because a requisite bond had not been given." Maj. Op. ¶ 27 n.6 (citing **Brainard**, 62 P.2d at 405). Such was not the case here. There is no dispute that because Shannon had the authority over the insurance proceeds, no bond was required. **Brainard** is neither relevant nor instructive.

¶66. Here, in the guardianship order, the chancellor specifically "granted [Shannon] *authority to take possession of all property* of said minor children, real and personal, tangible and intangible, wherever situated, and *specifically to apply for and collect on behalf of each of the wards, funds from insurance policies of which said minors are the respective beneficiaries . . . .*" (Emphasis added.) Shannon complied with her authority. She was the legally appointed guardian for both children. As their guardian, she applied for the insurance-policy benefits, she received the checks that were restricted to payment in her capacity as the guardian of the children, she endorsed the checks, and she presented the checks to Keesler Federal Credit Union for payment.

¶67. I am of the opinion that the circuit judge was correct to rule that the guardianship order did not impose any additional duty or obligation on Unum over and above its contractual duties.

> 2. *Whether the circuit judge was correct to rule that the "contractual duties . . . were not breached by Unum."*

¶68. Next, the circuit judge ruled that Unum did not breach any contractual duty. Again, the plaintiff offers no argument and cites no authority as to this issue, and it is procedurally barred.

¶69. If we consider the breach-of-contract claim, summary judgment should be affirmed. Jeffrey Werneth purchased a life-insurance policy from Unum. Jeffery paid the premium. Upon Jeffrey's death, Unum had a contractual duty to pay the proceeds to his designated beneficiaries.

28

¶70.　After Jeffrey's death, Unum received a claim.　Unum determined that two of the beneficiaries were minors.　Unum asked for and received court documentation that Shannon had been appointed as the guardian for each minor.　Unum then issued two checks for the payment of the proceeds to the guardian of each minor, payable to "Shannon Werneth Guardian for Jeffrey Jake Werneth Minor" and "Shannon Werneth Guardian for Shelby Lee Werneth Minor."

¶71.　The breach-of-contract claim turns on the payment.　Mississippi Code Section 75-3-110(c)(2)(i) (Rev. 2016) provides that "[i]f an instrument [a check] is payable to . . . [a] trust, an estate, or a person described as trustee or representative of a trust or estate, the instrument is payable to the trustee, the representative, or a successor of either, whether or not the beneficiary or estate is also named . . . ."　Unum issued each check payable to Shannon as the guardian, and each Unum check specifically restricted payment to Shannon as "guardian for . . . [a] minor."

¶72.　I am of the opinion that the circuit judge correctly ruled that Unum did not breach any contractual duty.

> 3.　*Whether the circuit judge was correct to rule that the guardianship order "only granted rights to Shannon to receive the funds as guardian and imposed duties on her regarding the handling of the funds."*

¶73.　Shannon was the legally appointed guardian for both children.　As their guardian, she had the right to claim the insurance-policy proceeds, and she received the checks, endorsed

the checks in her individual capacity, and presented the checks to Keesler Federal Credit Union for payment.

¶74.   Upon presentment of the checks for payment, with the restriction on the payee, Keesler or any other financial institution, under Mississippi Code Section 75-3-110(c)(2)(i), was notified that the proceeds were payable for the benefit of the estate or guardianship of the minors.  Despite the restriction on the payment, Shannon asked Keesler to deposit the funds in her personal bank account.  And, despite the restriction on the payment, Keesler caused the funds to be deposited in her personal account.

¶75.   The Keesler bank teller who handled the transaction testified in her deposition that she recognized that the checks were issued to Shannon *as guardian*, and the term "guardian" was significant because it indicated that there was court involvement.  The teller also testified that, when the checks were presented for deposit, she knew that the proceeds were for the benefit of Jeffrey and Shelby, who were both minors.  The teller nevertheless testified that she did not notify her supervisor or require that Shannon deposit the checks into a guardianship account.  Instead, the teller allowed Shannon to deposit the checks into Shannon's personal account.

¶76.   There is no genuine issue of a material fact in dispute that Unum complied with the terms of its contract.  Unum had a duty to pay the proceeds of the policy to the proper beneficiaries through their guardian.  Unum did so.  Under Mississippi law, Unum's restricted payment was sufficient to notify a financial institution, such as Keesler, that the

30

proceeds were restricted and were for the specific benefit of the minors through a court-established guardianship. The checks were payable to a guardian, as a fiduciary, but the proceeds actually belonged to the minors or their guardianship estate and should not have been deposited in a personal account.

¶77. I find no genuine issues of material fact in dispute. Unum is entitled to a judgment as a matter of law. M.R.C.P. 56(c). Because I agree with the circuit court and would affirm the grant of summary judgment, I respectfully dissent.